# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49306-3-II |
| Respondent, | |
| v. | |
| BERNARD LEE YONKER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Bernard Lee Yonker appeals from the trial court's denial of his suppression motion and his unlawful possession of a controlled substance conviction. Yonker argues that the trial court erred because (1) his community custody conditions did not prohibit firearm and ammunition possession, (2) there was no reasonable cause to believe he violated a community custody condition, and (3) there was no nexus between the suspected violation and the search. We hold that the search was lawful and affirm Yonker's conviction.

## FACTS

### I. BACKGROUND

On September 4, 2015, Community Corrections Officer (CCO) Matt Frank made a home visit to offender Yonker's residence. Frank found a spent shell casing right outside Yonker's front door. Suspecting Yonker had violated his conditions of community custody by possessing a

firearm or ammunition, Frank obtained permission to search Yonker's home. During the search, CCOs found methamphetamine in Yonker's bedroom. The State charged Yonker with one count of unlawful possession of methamphetamine with aggravating circumstances.

## II. SUPPRESSION HEARING

Yonker filed a motion to suppress the methamphetamine seized during the search of his residence. On February 1, 2016, the trial court held a suppression hearing. Two CCOs testified consistently with the above facts. Frank testified that people under community custody are not allowed to have firearms, ammunition, or explosive devices and that possession of such items was a "violation" of custody conditions. Verbatim Report of Proceedings (VRP) (Feb. 1, 2016) at 12. Yonker presented no testimony.

Yonker argued that the suppression motion should be granted because the spent shell casing found outside his home did not provide reasonable cause to believe Yonker possessed live ammunition and there was no nexus between the search and the suspected violation. Yonker did not dispute Frank's testimony that possession of live ammunition would violate Yonker's community custody conditions.

The State argued that people under the supervision of the Department of Corrections (DOC) are not allowed to possess firearms or ammunition, the presence of a shell casing near Yonker's front door provided reasonable cause that he violated his custody conditions, and the subsequent search of his residence was lawful.

The trial court stated,

> I think both parties would agree that Mr. Yonker would be violating his conditions and his requirement of his sentence if he were to possess a firearm or ammunition. That's not really the dispute. Rather, the dispute is whether the

2

observation . . . of a shell casing outside the residence does or does not lead to reasonable suspicion of a violation.

VRP (Feb. 1, 2016) at 33.

The trial court made the following relevant findings of fact:

On September 4, 2015, Frank conducted a routine visit at Yonker's single-family residence in a neighborhood composed of single-family homes.  At the time, Yonker was under community custody supervision.

When Frank approached Yonker's residence, he found a 9mm spent shell casing near Yonker's front door.  Frank was concerned that the shell casing might indicate that Yonker was in possession of firearms or ammunition.  Frank contacted his supervisor, who directed Frank to search Yonker's home with other CCOs and law enforcement.

CCOs arrived at Yonker's home and searched for firearms and ammunition.  A CCO found additional spent shell casings in the home.  And in a small wooden jewelry box located in Yonker's bedroom, a CCO found a plastic baggy containing methamphetamine.

Based on those findings, the trial court made the following relevant conclusions of law:

2. The above Findings of Fact are incorporated herein as conclusions of law.
3. RCW 9.94A.631(1) authorizes a CCO to search an offender's residence if there is reasonable cause to believe the offender has violated a condition or requirement of sentence.
4. RCW 9.41.045 prohibits offenders under the supervision of DOC to own, use or possess firearms and/or ammunition.
5. When CCO Frank found a spent shell casing near the front door of defendant's residence, a single family dwelling, CCO Frank had reasonable cause to believe defendant may be in violation of the terms and conditions of defendant's sentence.
6. CCO Frank's search of defendant's residence by himself and other CCO[s] was lawful pursuant to RCW 9.94A.631(1).
7. Defendant's Motion to Suppress . . . is denied.

Clerk's Papers (CP) at 42.

3

### III. TRIAL, CONVICTION, AND SENTENCE

After a stipulated facts bench trial, the trial court found Yonker guilty of unlawful possession of a controlled substance. Yonker's judgment and sentence now on appeal provides that he may not own, use, or possess any firearm unless a court authorizes it, and also provides that he must comply with all DOC instructions, rules, and regulations.

He appeals.

### ANALYSIS

### I. FIREARM AND AMMUNITION PROHIBITION

Yonker argues for the first time on appeal that his community custody conditions in effect at the time of the search did not prohibit possession of firearms or ammunition. But Yonker has waived this argument and may not assert it for the first time here.

### A. WAIVER

1. PRINCIPLES OF LAW

We generally do not consider arguments raised for the first time on appeal. RAP 2.5(a); *State v. Bonds*, 174 Wn. App. 553, 568, 299 P.3d 663 (2013). But a party can raise a manifest error affecting a constitutional right for the first time on appeal. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009); RAP 2.5(a)(3).

We employ a two-part analysis to determine whether an error is a "'manifest error affecting a constitutional right'" under RAP 2.5(a)(3). *O'Hara*, 167 Wn.2d at 98 (quoting RAP 2.5(a)).

To determine whether an error is constitutional, appellate courts first look to the asserted claim and assess whether, if the claim is correct, it implicates a constitutional interest. *O'Hara*, 167 Wn.2d at 98.

Second, we determine whether the alleged error is "manifest," which requires a showing of actual prejudice. *O'Hara*, 167 Wn.2d at 99. To demonstrate actual prejudice, there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *O'Hara*, 167 Wn.2d at 99 (internal quotation marks omitted) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim. *O'Hara*, 167 Wn.2d at 99. "'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'" *O'Hara*, 167 Wn.2d at 99 (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

2.    ISSUE NOT RAISED

Here, Yonker asserts that the trial court violated his Washington Constitution article I, section 7 privacy rights because it improperly admitted evidence from an unlawful search based on an erroneous understanding of Yonker's community custody conditions. Yonker does not attempt to explain why the error is manifest or why we should reach the claim under RAP 2.5(a)(3). Because he failed to raise the issue before the trial court, it is unpreserved. RAP 2.5(a).

3.    CONSTITUTIONAL IN NATURE

To determine whether we reach the merits of Yonker's unpreserved claim, we first consider whether his claim is constitutional in nature. *O'Hara*, 167 Wn.2d at 98; RAP 2.5(a)(3).

If true, Yonker's claim would implicate his privacy rights under article I, section 7 because a warrantless search of an offender conducted without reasonable suspicion of a community custody condition violates constitutional privacy rights. *State v. Winterstein*, 167 Wn.2d 620, 628-

29, 220 P.3d 1226 (2009). Thus, the claim is constitutional in nature and satisfies the first prong of the RAP 2.5(a)(3) analysis. *Bonds*, 174 Wn. App. at 568-69 (holding that the defendant raised a constitutional claim when he raised a new argument under article I, section 7 to support his suppression motion for the first time on appeal); *State v. Fenwick*, 164 Wn. App. 392, 399, 264 P.3d 284 (2011) (holding that appellant's claim that his article I, section 7 privacy rights were violated was "constitutional in nature").

4.    MANIFEST ERROR

The next question is whether Yonker has established that his alleged error is "manifest," which requires that the error is identifiable in the trial record. *O'Hara*, 167 Wn.2d at 98-99. For the error to be identifiable, the trial record must be sufficient to determine the merits of the claim. *O'Hara*, 167 Wn.2d at 99.

During the suppression hearing and trial, there was minimal factual development regarding Yonker's community custody conditions. Yonker did not object when the trial court stated that the parties agreed that Yonker's community custody conditions prohibited firearm and ammunition possession. And Yonker offered no evidence regarding the nature of his community custody conditions.

The limited evidence in the record addressing Yonker's community custody conditions supports that Yonker was prohibited from possessing firearms and ammunition and does not support Yonker's contention that no such conditions existed. The trial court, at the suppression hearing, was aware that under RCW 9.41.045, "[a]s a sentence condition and requirement, offenders under the supervision of the [DOC] . . . shall not own, use, or possess firearms or

ammunition." In addition, Frank testified that it was a "violation" for Yonker to possess firearms or ammunition. VRP (Feb. 1, 2016) at 12.

Furthermore, although his judgment and sentence was not considered at the suppression hearing, it provides additional support that Yonker was prohibited from firearm and ammunition possession. Yonker's sentence explicitly prohibits firearm possession. And the judgment and sentence required that he comply with DOC instructions, rules, and regulations. Frank's testimony supports that the DOC prohibited both firearm and ammunition possession, and Yonker was required to comply with that condition.

Here, the record fails to plausibly show that the asserted error had practical and identifiable consequences. *O'Hara*, 167 Wn.2d at 99. As such, Yonker fails to demonstrate actual prejudice and thus has not shown manifest error. *O'Hara*, 167 Wn.2d at 99. Because Yonker has not established that his unpreserved argument raises a manifest error affecting a constitutional right, he is not entitled to appellate review of this issue. *O'Hara*, 167 Wn.2d at 98; RAP 2.5(a)(3).

We hold that this issue is waived.

## II. REASONABLE CAUSE

Next, Yonker argues that even if he was prohibited from possessing ammunition, the trial court erred when it concluded that reasonable cause supported the search of his residence. We reject this claim.

### A. PRINCIPLES OF LAW

Unchallenged findings are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). "We review conclusions of law from an order pertaining to the suppression of evidence de novo." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

A CCO may search an offender's residence or other personal property "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence." RCW 9.94A.631(1). To have reasonable cause of a violation, the CCO must have a "'well-founded suspicion that a violation has occurred.'" *State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014) (quoting *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996)). The reasonable cause standard is analogous to the requirements of a *Terry*[1] stop and requires specific and articulable facts and rational inferences to support that a violation occurred. *State v. Parris*, 163 Wn. App. 110, 119, 259 P.3d 331 (2011).

## B. REASONABLE CAUSE SUPPORTED SEARCH

Yonker assigns error to conclusion of law 5, which states that by finding a spent shell casing near the front door of Yonker's single-family dwelling, "CCO Frank had reasonable cause to believe defendant may be in violation of the terms and conditions of defendant's sentence." CP at 42.

Frank conducted a routine visit at Yonker's single-family residence and found a 9mm spent shell casing near Yonker's front door. These facts are unchallenged findings and thus are verities on appeal. *O'Neill*, 148 Wn.2d at 571. The CCO's observation of a spent shell casing located near the front door of Yonker's single-family home provides specific and articulable facts giving rise to the reasonable inference that Yonker had ammunition and a firearm on the premises in violation of his community custody conditions. *Jardinez*, 184 Wn. App. at 524; *Parris*, 163 Wn.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

App. at 119. As such, the findings of fact support the conclusion that the CCO had reasonable cause to search Yonker's home.

Yonker argues that the CCO lacked reasonable cause to search his residence because there were multiple people in the house when the CCOs conducted the search, so it was unreasonable to infer that the shell casing belonged to Yonker without additional facts connecting the shell casing to him. To support this argument, Yonker cites *State v. Doughty*, 170 Wn.2d 57, 239 P.3d 573 (2010). In *Doughty*, our Supreme Court concluded that law enforcement had no reasonable suspicion for an investigative stop when the officer had only observed the defendant enter a suspected drug house, remain inside for several minutes, and then leave. 170 Wn.2d at 60. The court held that a person's mere presence or association with people or places suspected of criminal activity was not sufficient to create reasonable suspicion of criminal activity. *Doughty*, 170 Wn.2d at 60, 65.

As the State asserts, Yonker's situation is distinguishable from *Doughty*. Unlike the officer there, who only observed innocent conduct and association with people and places suspected of criminal activity, Yonker's CCO observed an empty shell casing near Yonker's front door that connected Yonker himself to a suspected community custody violation. It was reasonable for Yonker's CCO to infer that a shell casing is the result of the discharge of a firearm and such an action would violate Yonker's community custody conditions prohibiting firearm and ammunition possession. As the State asserts, the CCO was not required to be *certain* that the casing belonged to Yonker to further investigate the violation; he needed only reasonable suspicion. *Jardinez*, 184 Wn. App. at 524. The shell casing was at the entrance to Yonker's private residence, and it was

9

reasonable to infer that the casing belonged to him. Thus, the findings of fact support the conclusion that reasonable cause supported the search of Yonker's home.[2]

### III. NEXUS BETWEEN SUSPECTED VIOLATION AND SEARCH

Yonker argues that even if the CCOs had reasonable cause to search, the trial court erred when it concluded that there was a nexus between the suspected violation and the search of Yonker's home. In arguing that there was no nexus, Yonker appears to challenge conclusion of law 6—that the search was lawful. We disagree.

When a CCO conducts a search based on reasonable cause that a probationer has violated a community custody condition, there must be a nexus between the property searched and the suspected violation. *Jardinez*, 184 Wn. App. at 529; *State v. Livingston*, 197 Wn. App. 590, 598, 389 P.3d 753 (2017). A "nexus" is a "connection or link, often a causal one." BLACK'S LAW DICTIONARY 1205 (10th ed. 2014).

Yonker relies on *Jardinez*. In *Jardinez*, a probation officer suspected the probationer of failure to appear at a meeting and drug abuse. 184 Wn. App. at 521. Despite the fact that the officer admitted he had *no facts* indicating that the probationer's electronic device would contain evidence of these violations, the officer searched the device because the probationer appeared

---

[2] Yonker cites to *State v. Lippincott*, noted at 188 Wn. App. 1032, 2015 WL 4095289. In *Lippincott*, Division One of this court held that reasonable suspicion did not justify law enforcement's search of the appellant's purse immediately upon seeing her after she failed to report to her CCO. 2015 WL 4095289, at *5. The officer conducted the search because based on only the appellant's prior criminal record and her failure to report, the officer believed that there could be evidence of identity theft in her purse. *Lippincott*, 2015 WL 4095289, at *5. The court stated that "[t]he officer's reasoning . . . is too attenuated to be considered a well-founded or reasonable suspicion." *Lippincott*, 2015 WL 4095289, at *5. In contrast, Yonker's CCO had well-founded and reasonable suspicion to search Yonker's home because he observed an empty shell casing near Yonker's front door. *Lippincott* is easily distinguishable from Yonker's situation.

nervous. *Jardinez*, 184 Wn. App. at 521. The court held that the officer's search of the probationer's electronic device had no nexus to the suspected violation. *Jardinez*, 184 Wn. App. at 529-30.

Yonker's situation is distinguishable. The officer in *Jardinez* conducted a general search to determine if the defendant's electronic device contained any evidence of criminal activity. But here, the officers searched Yonker's home for evidence of ammunition or firearm possession, which was related to the criminal activity suspected based on the empty shell casing. In addition, the officer in *Jardinez* "had no reason to believe" that he would find evidence of suspected crimes on the defendant's device. 184 Wn. App. at 528. In contrast, here, based on the close proximity of the shell casing to Yonker's front door, there was a connection between the evidence of ammunition or firearm possession and Yonker's home.

Yonker also argues that the search was "overbroad" because the CCOs looked under Yonker's bed coverings and inside the wooden box containing drugs and the State failed to present evidence that firearms or ammunition would typically be hidden in these places. However, as the State asserts, the search of Yonker's home was calculated to search places where firearms or ammunition could be hidden, and under bed coverings and inside boxes in Yonker's bedroom fell within this scope. We note that because Yonker was on community custody he was motivated to hide any evidence of contraband. Although ammunition may not normally be stored inside a small jewelry box, the box was a place where ammunition could have been hidden. Because officers searched Yonker's home and places and personal property that could contain firearms or ammunition, there was a nexus between the suspected activity of possessing ammunition or firearms and the search conducted.

No. 49306-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

SUTTON, J.