222 P.3d 107 (2009)
STATE of Washington, Respondent,
v.
Charlotte June BLISS, Appellant.
No. 37393-9-II.
Court of Appeals of Washington, Division 2.
November 17, 2009.
*108 Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
Stephen D. Trinen, Pierce County Prosecutors Ofc., Tacoma, WA, for Respondent.
HUNT, J.
¶ 1 Charlotte June Bliss appeals her jury trial conviction for unlawful possession of methamphetamine. She argues that the trial court erred (1) in denying her CrR 3.6 motion to suppress the methamphetamine; and (2) in concluding that the arresting officer acted reasonably in stopping Bliss's vehicle to verify that she was the registered owner, for whom there were outstanding arrest warrants. Because the record is insufficiently developed for us to determine whether suppression is warranted under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), we remand to the trial court for a new suppression hearing.

FACTS

I. Background[1]
¶ 2 Shortly after midnight on June 23, 2007, Gig Harbor Police Officer Garrett Chapman was patrolling when he observed a white Plymouth van, illuminated by his headlights, driven by a white or light-skinned female with light-colored hair.[2] Chapman followed the white van and ran a registration check, which revealed that Charlotte Bliss was the registered owner, that she had outstanding felony and misdemeanor arrest warrants, *109 and that she was a white female, 5 feet 6 inches tall, 140 pounds, with blond hair. Believing that the van's driver fit Bliss's description, Chapman stopped the van, verified that Bliss was the driver,[3] arrested Bliss, and searched the van about 10 to 15 minutes after arresting Bliss.
¶ 3 Behind the van's front passenger seat, Chapman discovered a tan handbag which contained: (1) a glass pipe that appeared to have been used to smoke narcotics, and (2) two small baggies containing a white powdery substance that field tested positive for methamphetamine. Chapman completed a property inventory before having the van towed.

II. Procedure
¶ 4 The State charged Bliss with unlawful possession of methamphetamine.

A. Initial Motion To Suppress
¶ 5 Bliss moved to suppress the methamphetamine evidence, arguing initially that (1) because Chapman stopped her van simply because she matched a general description of the van's registered owner, the stop was not justified; and (2) Chapman could not possibly have seen who was driving the van as it passed by his patrol car.[4] The State countered that the stop was reasonable and proper under RCW 46.20.349, which allows an officer to stop a vehicle registered to a driver with a suspended license.
¶ 6 At the suppression hearing, Chapman testified consistently with the above facts. Bliss presented evidence suggesting that Chapman could not have seen the van's driver as she passed by his patrol vehicle. The trial court found that Chapman had seen the van's driver. Denying Bliss's motion to suppress, the trial court concluded that (1) "it is not a violation, under the Fourth Amendment to stop the vehicle under these circumstances to decide if the driver matched the person with the outstanding arrest warrants;" (2) Chapman acted reasonably when he stopped the van to determine whether the driver was the registered owner; and (3) the search was proper.

B. Second Motion To Suppress
¶ 7 Four months later, just before the trial was to begin, Bliss renewed her suppression motion, asking the trial court[5] to reconsider the earlier suppression ruling and to consider a new issue. In addition to the two previous suppression grounds she argued that the warrantless vehicle search was not lawfully incident to her arrest because Chapman did not search her van until approximately 27 minutes after he arrested her. The trial court denied the motion without prejudice, agreeing to consider this new ground if new facts emerged during trial.
¶ 8 After Chapman's trial testimony, Bliss renewed her motion to suppress based on the length of time between her arrest and the van's search. The trial court agreed that the search would have been improper if the search and arrest had not been sufficiently contemporaneous. Finding, however, that Chapman had searched the van 10 to 12, not 27, minutes after Bliss's arrest, the trial court ruled that the van's search was sufficiently contemporaneous with the arrest to be lawful; and it denied Bliss's motion to suppress on this third ground as well.
¶ 9 Bliss's first jury trial ended in a mistrial, based on juror misconduct. Following a retrial before the same judge, a second jury found Bliss guilty as charged.[6]
¶ 10 Bliss appealed. After the United States Supreme Court filed its opinion in Gant, we ordered supplemental briefing.

ANALYSIS
¶ 11 Bliss argues that the trial court erred when it denied her suppression motion. She contends that (1) Chapman's brief observation *110 of a white or light-skinned female with light-colored hair driving the van was not sufficient to establish that the driver was the registered owner; (2) without better identification of the driver, the stop was unjustified;[7] and (3) Gant, which now disallows a warrantless vehicle search incident to arrest under certain circumstances, requires suppression of the methamphetamine. Bliss's first two arguments fail. The record is insufficient for review, in light of Gant, of her third argument; therefore, we remand to the trial court to conduct another evidentiary hearing.

I. Standard of Review
¶ 12 We review a trial court's denial of a suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether these findings support the trial court's conclusions of law. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999), overruled on other grounds by Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Where, as here, the defendant does not challenge any of the trial court's findings of fact, we consider them verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). We review conclusions of law de novo. Mendez, 137 Wash.2d at 214, 970 P.2d 722.

II. "Terry Stops"
¶ 13 A warrantless search is unreasonable under both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution, unless the search falls within one or more specific exceptions to the warrant requirement. State v. Ross, 141 Wash.2d 304, 312, 4 P.3d 130 (2000). The State has the burden to prove that a warrant exception applies. State v. Vrieling, 144 Wash.2d 489, 492, 28 P.3d 762 (2001); State v. Ladson, 138 Wash.2d 343, 349-50, 979 P.2d 833 (1999).
¶ 14 One such exception is that an officer may briefly detain a vehicle's driver for investigation if the circumstances satisfy the "reasonable suspicion" standard under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Mendez, 137 Wash.2d at 220, 970 P.2d 722. To justify a Terry stop under the state and federal constitutions, there must be some suspicion of a particular crime connected to the particular person, rather than a mere generalized suspicion that the person detained may have been up to no good. State v. Martinez, 135 Wash.App. 174, 181-82, 143 P.3d 855 (2006). The officer must have an "articulable suspicion," meaning "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wash.2d 1, 6, 726 P.2d 445 (1986). The officer must be able to identify specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Mendez, 137 Wash.2d at 223, 970 P.2d 722 (citing Terry, 392 U.S. at 21, 88 S.Ct. 1868). In determining whether the officer's suspicion was reasonable, courts look to the totality of the circumstances. State v. Randall, 73 Wash.App. 225, 229, 868 P.2d 207 (1994).

A. Reasonable Suspicion
¶ 15 When Chapman stopped the van, (1) he knew there were outstanding arrest warrants for the van's registered owner, Bliss; (2) he knew that the van's registered owner, Bliss, was a white woman with blond hair; and (3) he had observed that the van's driver was a white or light-skinned female with light-colored hair, which fit the physical description accompanying Bliss's vehicle registration. These facts were sufficient to create a substantial possibility that it was Bliss driving the van and to justify an initial brief detention to verify her identity.[8] After verifying that the van's driver was Bliss, Chapman acted lawfully in arresting her on the outstanding warrants.

*111 B. Lambert Inapplicable
¶ 16 Bliss's reliance on Washington v. Lambert, 98 F.3d 1181 (9th Cir.1996), does not persuade us that the stop here was unlawful. In Lambert, a 42 U.S.C. § 1983 civil rights action against police officers, police stopped and arrested two African-American men who resembled "exceedingly vague" general descriptions of two men involved in a series of 19 armed robberies. Id. at 1183, 1190. The officers ordered the two men out of their car at gunpoint, handcuffed them, and placed them in separate police cars for five to 25 minutes before checking their identification and releasing them. Id. at 1183.
¶ 17 Aside from being African-American males, the two men did not fit the robbers' descriptions in numerous ways. Id. at 1183-84, 1190-91. Moreover, although the two detained men were driving a white car and a white car had been used in one of the 19 robberies, the officers were aware that (1) the detained men's car was a rental car, (2) but the white car the robbers had used was a stolen car, and (3) the car the robbers had used was a different make and model. Id. at 1184, 1191.
¶ 18 The Ninth Circuit held (1) the detention of the two men was an arrest rather than a Terry stop; and (2) that the two men had generally fit the vague physical descriptions of the robbers did not justify such an intrusive and aggressive stop, even though the two men were in a white car. Id. at 1185, 1190-91. The court rejected as "just plain absurd" that observing two men in a white car created a reasonable suspicion justifying the stop when the officers knew that the car used in the robbery was a different make and model and there was no information indicating that the robbers had ever used a rental car. Id. at 1191.
¶ 19 The first distinction between Bliss's case and Lambert is that the Lambert court was evaluating an arrest, rather than a Terry investigative stop.[9] Thus, the Ninth Circuit was addressing whether the officers had probable cause to arrest the two men, not whether they had a reasonable articulable suspicion to justify a Terry stop, at issue here. See Mendez, 137 Wash.2d at 220, 970 P.2d 722.
¶ 20 The second distinction is that, although Chapman may have relied on the van driver's resembling a general description of the van's registered owner, unlike the situation in Lambert, here (1) there was no evidence that distinguished the person Chapman saw driving the van from the registered owner's description, on which he relied; and (2) because the arrest warrants were for the registered owner of the van that he observed, there were direct connections among the van, the owner's description, the suspected criminal activity, and the driver.
¶ 21 We hold, therefore, that the trial court did not err in ruling that Chapman's stop of Bliss's van was reasonable and in denying her motion to suppress on this ground.

III. Gant

¶ 22 Bliss further argues that Chapman's warrantless search of her van was unlawful as incident to her arrest under the recent United States Supreme Court decision in Gant because (1) she was secured in the back of Chapman's patrol car when he searched her van, and (2) Chapman did not have reason to believe that the van contained evidence of the offense for which he arrested her.[10] Bliss also asserts that (1) she may raise this issue for the first time on appeal because this is a manifest error affecting a constitutional right; and (2) under Griffith v. Kentucky, 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), Gant applies retroactively to her appeal.
¶ 23 The State agrees that Gant applies retroactively under Griffith. But it argues that (1) Bliss waived this argument because she did not object on this specific ground below; (2) Bliss failed to comply with *112 RAP 2.5(a) and, therefore, failed to preserve this argument for appeal; (3) even if Bliss did not waive this argument, the evidence should be admitted under the "good faith exception" to the exclusionary rule; and (4) Bliss cannot establish ineffective assistance of counsel based on her trial counsel's failure to object on this ground below. We do not address the State's fourth argument because we hold that defense counsel sufficiently challenged the van's search incident to Bliss's arrest to preserve this issue for our consideration on appeal in light of Gant.
¶ 24 We recently held in State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), that a defendant must preserve the issue below in order to argue on appeal that Gant requires suppression of evidence found during a vehicle search incident to arrest. But Millan does not apply here because Millan did not move to suppress the evidence below; consequently there was no suppression hearing.[11] Bliss, however, not only moved to suppress, but also specifically argued that the passage of time between her arrest and the van's search rendered it no longer legally incident to her arrest.
¶ 25 In ruling that the search and arrest were sufficiently contemporaneous to render the van's search legally incident to Bliss's arrest, the trial court's denial of her motion to suppress was supportable under established law at the time. We hold, however, that even without having the benefit of the Supreme Court's recent Gant decision, Bliss sufficiently articulated to the trial court a challenge to the legality of the vehicle search incident to her arrest to have preserved this suppression issue for appeal under RAP 2.5(a) and to argue its illegality to us under Gant.
¶ 26 Nevertheless, through no fault of the parties or the trial court, the State had neither incentive nor opportunity to establish the existence of a lawful alternative basis for the vehicle search independent of the warrantless search incident to arrest only recently ruled unlawful in Gant.[12] Thus, the record before us on appeal is insufficiently developed for us to determine whether there are other legally valid facts and reasons to defeat a motion to suppress under Gant.
¶ 27 Accordingly, we retain jurisdiction over this appeal and make a limited remand to the trial court to conduct a new CrR 3.6 suppression hearing to consider whether any other exceptions to the warrant requirement might apply to the search of Bliss's van.[13]See Gant, 129 S.Ct. at 1724 (referring to possibility that "another exception to the warrant requirement" could validate a search made unlawful by the decision); RAP 9.11(a) (allowing this court to direct trial court to take additional evidence). On remand, within 60 days of the date this opinion is filed, the trial court shall (1) conduct the suppression hearing, at which both parties may present additional evidence; (2) enter written findings of fact and conclusions of law on the suppression issue; and (3) transmit such findings and conclusions to Division 2 of the Court of Appeals.
¶ 28 No later than 30 days after the trial court has entered the findings and conclusions, the non-prevailing party shall file a supplemental brief in this court or notify this *113 court that the party does not intend to file a supplemental brief. Within 20 days of service, the prevailing party may respond to such supplemental brief.
We concur: HOUGHTON, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] See the trial court's suppression hearing findings of fact, which Bliss does not challenge on appeal.
[2] The van was not speeding or violating any traffic laws.
[3] Bliss was the sole occupant.
[4] Bliss raised this last argument in a later "Trial Brief."
[5] The trial court judge was not the same judge who decided the earlier motion to suppress.
[6] Although Bliss raised additional suppression issues before her first trial, she did not raise any additional suppression issues before or during her second trial.
[7] Bliss also argues that RCW 46.20.349 does not apply and, thus, could not justify the stop because Chapman did not receive notification that her driver's license was suspended or revoked. Because we hold that Chapman was justified in stopping Bliss to ascertain her identity as the person named on outstanding arrest warrants, we do not reach this argument. See Analysis, Part II.A., infra.
[8] Bliss does not assert that, once Chapman verified who she was, he did not have authority to detain her further.
[9] Bliss does not argue that the initial stop amounted to an arrest rather than a Terry investigative stop.
[10] Bliss raises this issue solely on Fourth Amendment grounds. Accordingly, we do not discuss State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009), in which our Supreme Court recently examined the search incident to arrest exception to the warrant requirement under article I, section 7 of our state constitution.
[11] We note that, sitting with another panel, one member of our panel authored and recently filed an opinion disagreeing with Millan: State v. McCormick, 152 Wash.App. 536, 216 P.3d 475 (2009) (trial court denied vehicle passenger's motion to suppress, as fruit of an unlawful search, evidence in her bag found on passenger side floorboard). Because, as we note above, Millan does not apply here, we do not attempt to resolve this disagreement.
[12] The Supreme Court held:

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.
Gant, 129 S.Ct. at 1723-24; see also 129 S.Ct. at 1721 (recognizing that safety and other considerations, such as a lawful search of a vehicle for evidence pertaining to the crime underlying the arrest, may provide independent justification for warrantless searches of a vehicle).
[13] We realize that this remedy may consume extra judicial resources, but, given the circumstances of this case, we see no reasonable alternative.