# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48446-3-II |
| Respondent, | |
| v. | |
| JEFFERSON DELP-MARQUEZ, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jefferson Delp-Marquez appeals his conviction for obstruction of a law enforcement officer. Delp-Marquez argues that the trial court erred when it (1) found that Officer Ballou "saw three individuals walking quickly away from the scene," and (2) concluded that the order to stop was lawful. We hold that the trial court did not err when it (1) found that Officer Ballou "saw three individuals walking quickly away from the scene" because the finding is supported by substantial evidence, and (2) concluded that the order to stop was lawful because the totality of the circumstances showed that the callers' tips were reliable and provided reasonable suspicion for the stop. Accordingly, we affirm.

## FACTS

### A. THE INCIDENT

On June 25, 2015, Vancouver Police Officer Julie Ballou was on patrol when she was sent to investigate an incident at the intersection of Fourth Plain and Broadway. Dispatch received several calls reporting a fight at the intersection, where a bus stop is located. The callers reported

that three men were assaulting another man and that one of the men had a gun.  Dispatch informed

Officer Ballou that:

> [T]he guy with the gun [was] a white male, about 18, average build, red shirt, blue jeans.  They gave another description of a white male, 18-years-old, with a gray marijuana shirt and blue shorts.  Another guy did not have a shirt, and then a mixed race male with a red shirt and blue jeans, another subject described in a white shirt.

Report of Proceedings (RP) at 19.  The callers also reported that the men were running towards

Fourth Plain once the sirens were heard.  One call was from the Clark County Public

Transportation dispatch reporting on behalf of a bus driver; another call was from an identified

citizen who provided a phone number and address; and two other calls were from unidentified

citizens who only provided their numbers.  Several unidentified citizens provided descriptions of

the men involved, with one of them screaming to get officers on the scene.  In addition to receiving

the information verbally from dispatch, Officer Ballou received the information on her computer

screen in her patrol car.

Officer Ballou arrived at the intersection, in uniform, in her marked patrol car.  She was

only a couple blocks away and arrived less than a minute after receiving the information from

dispatch.  She saw a number of people at the bus stop on the intersection, including three men who

"were coming from the area eastbound on 4th Plain," two of whom stood out because they matched

the description from dispatch; one of the men was wearing a grey shirt and another a red shirt.  RP

at 22.  Officer Ballou got out of her car and ordered all three individuals to stop; she was about

five feet away.  Two of the men complied, but Delp-Marquez, who was wearing the red shirt, ran.

The man in the grey shirt then pointed at Delp-Marquez and said, "That's your guy."  RP at 24.

Officer Ballou ran after Delp-Marquez and told him to stop. Delp-Marquez continued to run and held his waistband. From her experience and training, Officer Ballou believed that he may have had a gun in his waistband. About two blocks away, another officer was able to apprehend Delp-Marquez. Officer Ballou then placed Delp-Marquez under arrest.

On July 27, the Clark County Prosecutor's Office charged Delp-Marquez with one count of obstruction of a law enforcement officer.[1]

B.      TRIAL COURT PROCEEDINGS

Delp-Marquez moved to suppress his seizure and dismiss the charge, challenging his seizure because Officer Ballou did not have legal authority to stop him. By agreement of the parties, the hearing on the motion to dismiss was combined with the trial on the obstruction of a law enforcement officer charge.

At trial, Officer Ballou testified about her involvement as outlined above. The trial court admitted the printout of the information Officer Ballou had reviewed on her computer screen in her patrol car.

Delp-Marquez also testified. He stated that he was at the intersection when Officer Ballou arrived. He was scared of the guy next to him who had a gun, so he ran because he wanted to get to safety. Delp-Marquez also stated that he did not hear Officer Ballou's orders to stop.

The trial court denied Delp-Marquez's motion to suppress the seizure and motion to dismiss the charge. The trial court found him guilty of obstruction of a law enforcement officer. Specifically, the trial court found, in relevant part, that:

---

[1] RCW 9A.76.020.

1.  On June 25, 2015, [Delp-Marquez], hereafter "the respondent," was near the corner of Broadway and Fourth Plain Boulevard when a disturbance occurred. This was in Vancouver, Washington, in Clark County, Washington.

2.  Officer Ballou was dispatched to the disturbance and arrived within approximately one minute of being dispatched.

3.  When she arrived, in her fully-marked police car, she saw three individuals walking quickly away from the scene. All three matched some kind of description she was provided but two matched more specifically to the descriptions of those involved in the fight.

4.  She commanded all three individuals to stop. At this time she was in her police uniform. Two individuals stopped as requested but the third individual, the respondent, took off running.

Clerk's Papers (CP) at 77-78. The trial court then concluded, in relevant part, that:

2.  Based on the facts in evidence, the respondent ignored the officer's lawful commands to stop; chasing him prevented the officer from performing her official duties; and the respondent knew the officer was discharging her official duties at that time.

CP at 78. In reaching its findings, the trial court found that Delp-Marquez's testimony was not credible. Delp-Marquez appeals.

ANALYSIS

A.  TRIAL COURT'S FINDING OF FACT SUPPORTED BY SUBSTANTIAL EVIDENCE

Delp-Marquez argues that the trial court erred when it found that Officer Ballou "saw three individuals walking quickly away from the scene" because there was insufficient evidence presented. Br. of Appellant at 7 (capitalization omitted). We disagree.

We review a trial court's findings of fact to determine whether they are supported by substantial evidence. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). Substantial evidence exists if there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational

person of the finding's truth. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of evidence. *State v. Trey M.*, 186 Wn.2d 884, 905, 383 P.3d 474 (2016).

Here, the evidence showed that (1) Officer Ballou arrived at the intersection less than a minute after being dispatched, (2) Officer Ballou received the information from callers verbally from dispatch and on her computer screen in her patrol car, (3) the printout of the information Officer Ballou reviewed on her computer screen in her patrol car stated "3 [people] RUNNING EB BROADWAY. FOURTH PLAIN" and "HEARD SIRENS .. RUNNING TOWARDS FOURTH PLAIN," and (4) as Officer Ballou approached the intersection, she saw "three males that were coming from the area eastbound on 4th Plain." Ex. 2; RP at 22. Also, Delp-Marquez testified that he was crossing the street going away from the bus stop when Officer Ballou appeared at the intersection. Thus, substantial evidence supports the trial court's finding that Officer Ballou "saw three individuals walking quickly away from the scene." CP at 78.

B.    OFFICER'S AUTHORITY TO ORDER STOP

Delp-Marquez argues that the trial court erred when it concluded that Officer Ballou had lawful authority to order him to stop because Officer Ballou failed to establish the callers' reliability before acting on their tips. We disagree.

1.    Legal Principles

Both the Fourth Amendment of the U.S. Constitution and article I, section 7 of our state Constitution prohibit warrantless searches and seizures unless an exception to the warrant

requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). A *Terry*[2] stop, a brief investigatory seizure, is an exception to the warrant requirement. *State v. Doughty*, 170 Wn.2d 57, 61-62, 239 P.3d 573 (2010). Such a stop is justified when an officer has a "reasonable suspicion" that the detained person was, or was about to be, involved in a crime. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). However, the available facts must substantiate more than a generalized suspicion that the detained person is "up to no good" and must connect the person to the specific crime the officer is investigating. *Id.* at 618 (quoting *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009)).

An officer's reasonable suspicion may be based on an informant's tip. *State v. Kennedy*, 107 Wn.2d 1, 7-8, 726 P.2d 445 (1986). When an informant's tip is relied on for an officer's suspicion, the State must show that the tip has some "indicia of reliability" under the totality of the circumstances. *Z.U.E.*, 183 Wn.2d at 618. This requires a showing of (1) the informant's reliability, or (2) some corroborative observation made by the officer, that "shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Id.* If relying on corroboration, the corroboration must be of more than just innocuous facts such as appearance. *Id.* at 618-19.

In *Navarette v. California*, an unknown 911 caller reported to dispatch that she was run off the road by a drunk driver about five minutes prior and provided dispatch with her location; the direction the other driver was headed; and the color, make, model, and license plate number of the other vehicle. 134 S. Ct. 1683, 1686-87, 188 L. Ed. 2d 680 (2014). An officer headed towards

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the caller's location and spotted a vehicle matching the caller's description about 13 minutes later. *Id.* at 1687. The officer pulled the vehicle over and subsequently arrested the occupants after finding 30 pounds of marijuana. *Id.* The occupants later challenged the officer's reasonable suspicion for the stop. *Id.* The Court held that the anonymous 911 caller's tip was reliable. *Id.* at 1692. Applying the totality of circumstances approach, the Court reasoned that the totality of circumstances provided a sufficient indicia of reliability allowing the officer to base his reasonable suspicion on the caller's tip. *Id.* The Court noted that the caller was an eyewitness, she made the report at the time of the incident, and she called the emergency 911 line, which made her accountable for the provided information. *Id.* at 1689-90.

When a trial court denies a motion to suppress, we review the trial court's conclusions of law de novo. *State v. Mecham*, 186 Wn.2d 128, 137, 380 P.3d 414 (2016).

2. Indicia of Reliability and Reasonable Suspicion Present

Like in *Navarette*, the callers in this case who reported the fight and provided descriptions of the men had some indicia of reliability. One caller was from the Clark County Public Transportation dispatch reporting on behalf of a bus driver who was an eye witness. One caller provided a name, address, and phone number. Other callers provided just a name or phone number. While some callers did not provide any identifying information, all the callers who provided the descriptions were eyewitnesses, made their reports at the time of the incident, and called the emergency 911 line. The information from the callers was consistent. Furthermore, the witnesses observed firsthand a fight involving a gun, which can be quite startling. This was shown by one of the callers, who was in an excited state during the call and screaming to get officers to the scene. All of this information was known to Officer Ballou when she ordered Delp-Marquez to stop.

7

Based on the totality of the circumstances, Officer Ballou had a sufficient basis to evaluate the reliability of the tips and formulate reasonable suspicion to stop Delp-Marquez.

Delp-Marquez argues that this case is similar to *State v. Z.U.E.* We disagree.

In *State v. Z.U.E.*, a named, but otherwise unknown 911 caller reported that she saw a 17-year-old girl hand a gun to a shirtless man, who then carried the gun through the park. 183 Wn.2d at 614. The caller provided a detailed description of the girl's appearance but not why she thought the girl was 17 years old. *Id.* Other callers had reported seeing a man with a gun in the park but only one reported the girl. *Id.* The other callers also reported that the man got into a white or gray two-door car with about eight other people at an intersection by the park. *Id.* at 613-14. Officers were dispatched to the intersection and could not find the man, but they did spot a girl, matching the description provided, get into the backseat of a gray four-door car. *Id.* at 614-15. As a part of their investigation for a minor in possession of a firearm, the officers approached the car and ordered the occupants out. *Id.* at 615-16. Z.U.E. was one of the occupants and was subsequently arrested for obstruction of law enforcement and possession of marijuana. *Id.* at 616. Z.U.E. later challenged the officers' reasonable suspicion for the stop and the reliability of the caller's tip. *Id.*

The *Z.U.E.* court held that the 911 caller's tip was unreliable and did not create a sufficient basis to justify the stop. *Id.* at 622-23. The court reasoned that while the call was made by a citizen eyewitness, made contemporaneous to the events, came through an emergency 911 line, and the caller provided her name and contact information, the caller did not offer any factual basis to support the allegation that the crime of a minor in possession of a firearm had been committed. *Id.* The officers could not ascertain how the caller knew the girl was a minor to evaluate the accuracy of the statement. *Id.* The court also noted that the officers did not make any corroborative

observations showing the presence of criminal activity or that the caller's information was obtained in a reliable fashion; corroboration of appearance was not enough. *Id.* at 623.

In contrast, the callers' tips here provided a factual basis to the support the allegation that a crime had been committed. Several 911 callers reported a fight at the intersection of Broadway and Fourth Plain involving three men assaulting another man. The callers reported that there was a white man with a red shirt and blue jeans and a mixed race man with a red shirt and blue jeans involved. Despite there being several callers, the information about what was happening and what the suspects were wearing was consistent. While some callers were unidentified, several did provide contact information.

The information provided by the 911 callers was consistent with what Officer Ballou observed when she arrived at the intersection of Fourth Plain and Broadway less than a minute after receiving the call from dispatch. Once at the scene, she observed two men who matched a description provided by the callers, including Delp-Marquez, who was wearing a red shirt, and ordered them to stop. Based on the descriptions of the men's appearance, location, and direction, Officer Ballou believed that Delp-Marquez may have been involved in the fight. Also, based on her training and experience, the manner in which Delp-Marquez kept grabbing his waistband as he ran away told her that there was a possible weapon in his waistband. Thus, unlike *Z.U.E.*, where the single caller did not provide a factual basis for the alleged crime of a minor in possession of a firearm, the callers' reports here, along with Officer Ballou's observations, showed that the callers' tips possessed an indicia of reliability and provided a reasonable suspicion for the stop. We hold that the trial court did not err when it concluded that Officer Ballou had lawful authority to order Delp-Marquez to stop.

No. 48446-3-II

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.