# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50931-8-II |
| Respondent, | |
| v. | |
| KELLY ALICE PETERS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Kelly Alice Peters appeals her possession of a controlled substance conviction.  She argues the methamphetamine that forms the basis of her conviction should have been suppressed because it was discovered as the fruit of an unlawful seizure.  We disagree and affirm.

## FACTS[1]

Deputy Justin Messman of the Clark County Sheriff's Office responded to a report of a disturbance at an apartment complex.  An initial 911 call came in at 6:10 PM from an anonymous caller who claimed to be a neighbor who could hear fighting in a nearby apartment.  The caller stated it was a female versus female disturbance and that one of the two people involved in the fight was a white female.

A second 911 call came in at 6:12 PM from Peters's sister, Kim Fountain, identifying herself as the victim of an assault.  Fountain stated that her sister attacked her, pushed her down, and hit

---

[1] The facts derive in part from the trial court's findings of fact, which are unchallenged and, therefore, verities on appeal.  *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

her head. Fountain identified her sister as Peters. She described her sister as a white female, with long red hair, wearing a camouflage skirt, a black tank top, and black knit pullover. Fountain reported that she needed medical treatment for her head. Both 911 calls came from the same apartment complex. (2 RP 112) Deputy Messman was aware of both 911 calls as he arrived at the apartment complex at 6:15 PM.

Upon his arrival at the apartment complex, Deputy Messman observed two women who looked similar to each other walking together in the apartment complex parking lot. One of the women matched the description given by Fountain because she had red hair and was wearing a camouflage skirt. Deputy Messman told the women to sit down and requested identification. The women gave Deputy Messman their identifications and he ran their names through dispatch.

Dispatch notified Deputy Messman that Peters had a warrant for her arrest. Deputy Messman then arrested Peters on the warrant.[2] Peters was holding a trench coat and a purse. Deputy Messman searched the coat and purse incident to Peters's arrest. He located a baggie of methamphetamine and a glass pipe inside a zippered case in one of the coat pockets.

The State charged Peters with possession of a controlled substance (methamphetamine) and fourth degree assault—domestic violence. Peters filed a motion to suppress evidence seized from her coat at the time of her arrest, arguing that she was unlawfully seized because law enforcement did not have reasonable suspicion to detain her. The trial court denied her motion, concluding that Deputy Messman had "reasonable suspicion to detain [Peters]" as the 911 callers

---

[2] Clark County Sheriff's Office Deputy Wayne Phillips arrived on the scene as back up. He talked with Fountain and determined there was also probable cause to arrest Peters on fourth degree assault—domestic violence.

corroborated each other because they were close in time and identified the same area; Deputy Messman saw two women that looked similar; and one of the women matched the suspect's description. Supplemental Clerk's Papers (Suppl. CP) at 207. The trial court concluded that the search of Peters's coat was "a search incident to arrest and was lawful." Suppl. CP at 208.

The jury found Peters guilty as charged.[3] Peters appeals her possession of a controlled substance (methamphetamine) conviction.

ANALYSIS

A.    SEIZURE

Peters contends the methamphetamine located inside her coat pocket should have been suppressed because there was no reasonable suspicion to justify her seizure. We disagree.

1.      Standard of Review

We review a trial court's legal conclusions following a motion to suppress de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). We also review whether the conclusions of law flow from the findings of fact. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014).

2.      Legal Principles

Both the Fourth Amendment of the U.S. Constitution and article I, section 7 of our state Constitution prohibit warrantless searches and seizures unless an exception to the warrant

---

[3] Peters states that at sentencing, "[t]he State presented no evidence to support its assertion that [Peters's] prior convictions existed and the trial court conducted no on-the-record analysis of the comparability of the Oregon crimes to Washington crimes." Br. of Appellant at 6. Peters, however, does not assign error to her sentence nor does she provide argument in support of these statements as required under RAP 10.3(a)(6). For this reason, we do not discuss this issue further. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). A brief investigatory seizure, known as a *Terry*[4] stop, is an exception to the warrant requirement. *State v. Doughty*, 170 Wn.2d 57, 61-62, 239 P.3d 573 (2010). Such a stop is justified when an officer has a " 'reasonable suspicion' " that the detained person was, or was about to be, involved in a crime. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015) (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)). However, the available facts must substantiate more than a generalized suspicion that the detained person is " 'up to no good' " and must connect the person to the specific crime the officer is investigating. *Id*. at 618 (quoting *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009)).

An officer's reasonable suspicion may be based on an informant's tip. *Z.U.E.*, 183 Wn.2d at 618. When an informant's tip is relied on for an officer's suspicion, the State must show that the tip has some "indicia of reliability" under the totality of the circumstances. *Id.* This requires a showing of (1) the informant's reliability, or (2) some corroborative observation made by the officer that "shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Id.* An informant's reliability "is enhanced when he or she purports to be an eyewitness to the events described." *State v. Lee*, 147 Wn. App. 912, 918, 199 P.3d 445 (2008), *review denied*, 166 Wn.2d 1016 (2009).

A request for identification is permissible in the course of a *Terry* stop. *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982). If there is justification to arrest the person, an officer may search him or her incident to the arrest. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

3.      Reasonable Suspicion Based on Informant's Tip

Here, two 911 callers reported there was a fight between two women at an apartment complex. The first 911 caller was a neighbor and stated that there was a fight in a nearby apartment involving two women and that one of the women was a white female. The other caller was the victim who said she was assaulted by her sister. The calls were made within minutes of each other and Deputy Messman arrived just three minutes after the second call.

In her call to 911, Fountain described her sister as a white female, with long red hair, wearing a camouflage skirt, a black tank top, and black knit pullover. When Deputy Messman arrived, he observed two women who looked similar to each other walking together in the apartment complex parking lot. One of the women matched the description given by Fountain because she had red hair and was wearing a camouflage skirt.

Because the two 911 callers made their calls just two minutes apart; because both reported a fight, described the exact location of the fight, and gave specific information about the involved parties; and because Fountain was an eyewitness to the assault, the 911 callers' tips had sufficient indicia of reliability to provide Deputy Messman with reasonable suspicion to approach Peters and request identification. While investigating, Deputy Messman learned that Peters had a warrant for her arrest.[5] He arrested her on that warrant and lawfully searched her incident to the arrest. *See State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015) (one exception to the warrant

---

[5] Peters appears to argue that an officer exceeds the scope of a *Terry* stop if he or she holds onto the suspect's identification while the officer is doing a warrant check. Peters does not support her argument with legal authority as required by RAP 10.3(a)(6). Therefore, we do not address it further. *Cowiche Canyon,* 118 Wn.2d at 809.

No. 50931-8-II

requirement is a search incident to arrest).   At this point, Deputy Messman located the methamphetamine.

Given the facts, the methamphetamine was obtained following a lawful seizure.  The trial court properly concluded likewise in denying Peters's motion to suppress.

B.      APPELLATE COSTS

Peters asks that we decline to impose appellate costs if the State prevails on appeal.  The State represents that it will not request appellate costs.  We accept the State's representation, and we deny an award of appellate costs to the State.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, A.C.J.

We concur:

Bjorgen, J.

Sutton, J.

6