# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52482-1-II |
| Respondent, | |
| v. | |
| DERRICK FRANCIS SALAS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Derrick Francis Salas appeals his convictions and sentence for possession of a controlled substance (methamphetamine), obstructing a law enforcement officer, and third degree driving while license suspended. Salas argues that (1) the trial court's CrR 3.6 findings of fact were not supported by substantial evidence; (2) the trial court erred by failing to suppress the evidence derived from the *Terry* stop after law enforcement had identified Salas and the basis for his detention was alleviated; (3) the traffic stop was unconstitutionally pretextual; (4) his trial counsel was ineffective for failing to move to suppress the evidence on the basis of the pretextual stop; and (5) the community custody supervision fees should be stricken. We affirm Salas's convictions but remand for the trial court to strike the community custody supervision fees from Salas's judgment and sentence.

FACTS

Officer Steven Forbragd and Sergeant William Renfro were assisting with the service of a search warrant on a house. They had an arrest warrant for Eric Salas, who was associated with the house. As they were about to serve the search warrant, a truck drove by with a driver who matched the description of Eric.[1]

Officer Forbragd stopped the truck and asked the driver for his driver's license. Rather than produce a driver's license, the driver handed him a Washington identification card. The identification card showed that the driver was Derrick Salas, not Eric. Because Salas handed him an identification card when he was asked to provide a driver's license, Officer Forbragd became suspicious that Salas was driving without a license and checked Salas's name in the Department of Licensing (DOL) system. This check showed that Salas's license had been suspended.

Officer Forbragd arrested Salas and conducted a search incident to arrest. During this search, Salas kicked at Officer Forbragd and hindered his ability to search. Despite the hindrance, Officer Forbragd discovered methamphetamine in Salas's pants pocket.

---

[1] Because Eric Salas has the same last name as the appellant, he is referred to by his first name for clarity. No disrespect is intended.

No. 52482-1-II

The State charged Salas by first amended information with possession of a controlled substance (methamphetamine),[2] obstructing a law enforcement officer,[3] and driving while license suspended.[4]

A.    CrR 3.6 SUPPRESSION HEARING

Salas moved to dismiss his case pursuant to CrR 3.6. Salas argued that after the initial stop to check the identification of the driver, he should have been released as soon as the police confirmed he was not Eric.

Officer Forbragd testified at the CrR 3.6 hearing that he was assisting in the service of a search warrant on a residence. He had been "briefed on probable cause to arrest an individual associated with the house." Verified Report of Proceedings (VRP) (2/15/18) at 17. He had received a picture and a verbal description of Eric. In the picture, Eric had a neck tattoo. Forbragd also testified that he observed a vehicle being driven by a male who matched the description he had been given for the arrest warrant. Forbragd stated that when he pulled the driver over, he was not paying attention to whether the driver had a tattoo. And he was not able to see a tattoo as the vehicle passed by because the driver was wearing a jacket. Sergeant Renfro, who also was on the scene to assist with serving the warrant, told Forbragd over the radio that he thought it was the same male that was described to them in the briefing and to stop the vehicle. Forbragd did not run the license plate of the vehicle to see who owned the vehicle before stopping the vehicle.

---

[2] RCW 69.50.4013 and RCW 69.50.206(d)(2).

[3] RCW 9A.76.020(1).

[4] RCW 46.20.342(1)(c).

3

When Officer Forbragd pulled the driver over, Forbragd told the driver, "Eric, place your hands on the dash or the steering wheel."  VRP (2/15/18) at 19.  The driver said, "I'm not Eric. I'm Derrick."  VRP (2/15/18) at 19.  Forbragd then asked the driver for his driver's license to verify that he was Eric.  The driver provided him with a Washington identification card.  When Forbragd asked Salas if he had a license, Salas replied, "No."  VRP (2/15/17) at 20.  The reason Forbragd asked for the license the second time was because he suspected the person was not Eric and was operating a vehicle without a license.  Forbragd returned to his patrol car to run the name, Derrick Salas, to see if there was a driver's license in the DOL system.  He learned that Derrick Salas's driver's license had been suspended.

Officer Forbragd then asked Salas to step out of the vehicle to place him under arrest for driving with a suspended license.  Forbragd searched Salas incident to the arrest.  While Forbragd was searching Salas, Salas got upset because Forbragd allegedly hit him in the testicles.  Salas then called Forbragd a few epithets.  During the search incident to arrest, Forbragd found "a baggie of suspected illegal substances."  VRP (2/15/18) at 21.  Salas claimed that Forbragd planted the substances on him.

Sergeant Renfro testified that he saw a pick-up truck associated with the house.  The truck had been parked at the house numerous times.  Renfro "believed it could have had our suspect in there."  VRP (2/15/18) at 38.  He testified, "I recalled the suspect was associated with the truck. And I've learned that apparently I said something to Officer Forbragd it may have had in him the vehicle.  I don't recall doing that though."  VRP (2/15/18) at 38-39.  Renfro did not remember specifically speaking to Forbragd.  Nor did he recall whether he said anything over the radio about

4

the truck. He stated, "I understand that Officer Forbragd has that in his report. And I have no reason to doubt that." VRP (2/15/18) at 40.

The trial court concluded that "[the investigation]'s within the lawful scope of the *Terry* stop and is reasonably related to articulable suspicion and so the motion to suppress is denied." VRP (2/15/18) at 49. The court entered written findings of fact, which state in relevant part:

> [II.] That Officers Forbragd and Renfro observed a car drive by their location.
>
> [III.] That Officers Forbragd and Renfro believed the car's driver was Eric Salas who had a warrant for his arrest.
>
> [IV]. That Officer Forbragd recognized Eric Salas because he previously looked at Eric Salas' booking photographs.
>
> [V.] That Officer Renfro told Officer Forbragd to stop the car.
>
> . . . .
>
> [VIII.] That Officer Forbragd asked the defendant to provide a driver's license.
>
> [IX.] That the defendant provided an identification card but not a driver's license.

Clerk's Papers (CP) at 70-71. The court also entered the following written conclusions of law:

> [II.] That Officer Forbragd performed a lawful traffic stop under *State v. Bonds*, 74 Wash.App. 553, 299 P.3d 663 (2013). Reasonable suspicion for a warrantless seizure requires only a sufficient probability, not absolute certainty. Officers Forbragd and Renfro believed the car's driver was Eric Salas and believed it enough to stop the car. Officer Forbragd previously examined Eric Salas' booking photographs so the seizure was based on specific and articulable facts, not a mere hunch.
>
> [III.] That Officer Forbragd had a reasonable suspicion the defendant drove without a valid license when the defendant did not provide a driver's license on

request. When the defendant instead only provided an identification card, it was not unreasonable for Officer Forbragd to ask again for a driver's license.

[IV.] That Officer Forbragd obtained additional reasonable suspicion when the defendant admitted he did not have a driver's license. The admission justified Officer Forbragd's decision to check the defendant's driver's license status, confirm he had a suspended license, and arrest him for Driving While License Suspended or Revoked in the Third Degree.

CP at 71-72.

B.    JURY TRIAL, VERDICT, AND SENTENCING

The case was tried to a jury. The jury found Salas guilty of possession of a controlled substance, obstructing a law enforcement officer, and third degree driving while license suspended.

The trial court sentenced Salas to six months and one day in total confinement and 12 months of community custody. Salas was ordered to pay "DOC monthly supervision assessment" and a $500 victim assessment fee. CP at 173. At the sentencing hearing, the trial court found Salas to be indigent. The trial court also entered an order of indigency finding that Salas lacked sufficient funds to prosecute an appeal.

Salas appeals.

ANALYSIS

A.    STANDARD OF REVIEW

"In reviewing the denial of a motion to suppress, we review the trial court's conclusions of law de novo and its findings of fact used to support those conclusions for substantial evidence." *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). This court reviews challenged findings of fact to determine whether they are supported by substantial evidence, which is evidence sufficient to persuade a fair-minded, rational person of their truth. *State v. Levy*, 156 Wn.2d 709,

733, 132 P.3d 1076 (2006). However, this court "'will review only those facts to which error has been assigned.'" *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000) (quoting *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994)). If the defendant does not challenge the findings of fact, then this court considers them verities on appeal. *State v. Betancouth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).

B.      CHALLENGED CRR 3.6 FINDINGS OF FACT

Salas only challenges two CrR 3.6 findings—finding of fact III and finding of fact IV.[5] The remaining findings of fact are unchallenged and, thus, are verities on appeal. *See Id*.

1.      Finding of Fact III

Salas challenges finding of fact III, which states: "Officers Forbragd and Renfro believed the car's driver was Eric Salas who had a warrant for his arrest." CP at 70-71. Salas argues that this finding contradicts Forbragd's and Renfro's testimony.[6]

At the CrR 3.6 suppression hearing, Officer Forbragd testified that he was there to assist with the service of a search warrant and had been "briefed on probable cause to arrest an individual

---

[5] Although Salas assigns error to findings of fact III and IV, his briefing does not address whether substantial evidence supports the challenged findings. Rather, Salas addresses his challenge to findings of fact III and IV in the context of his pretext challenge. Because the State responded to Salas's challenge by addressing whether the findings are supported by substantial evidence, we address the merits of Salas's challenge to findings of fact III and IV.

[6] Salas also relies on Officer Brian Hall's trial testimony to support his challenge to the trial court's CrR 3.6 finding of fact III. However, we consider only the testimony presented at the CrR 3.6 hearing in a challenge to CrR 3.6 findings of facts. *See State v. Jones*, 50 Wn. App. 709, 712, 750 P.2d 281 (1988) (When evaluating the trial court's decisions regarding admissibility, we review the evidence presented to the court when it made the decision, not the evidence ultimately admitted at trial).

associated with the house." VRP (2/15/18) at 17. He had received a picture and a verbal description of Eric. Forbragd also testified that he observed a vehicle being driven by a male who matched the description he had been given for the arrest warrant. When he pulled the driver over, Forbragd was not paying attention to whether the driver had a tattoo. And he was not able to see a tattoo as the vehicle passed by because the driver was wearing a jacket. Forbragd further testified that Sergeant Renfro, who was on the scene, told him over the radio that he thought it was the same male as well and to pull him over.

Sergeant Renfro testified that he saw a pick-up truck related to the house drive by. He "believed it could have had our suspect in there." VRP (2/15/18) at 38. He also believed the vehicle was associated with Eric because it had been parked at the house numerous times. While he did not recall whether he said anything over the radio about the vehicle, Renfro testified that "I have no reason to doubt that." VRP (2/15/18) at 40.

Based on the record, there is sufficient evidence to persuade a fair-minded, rational person that Officer Forbragd and Sergeant Renfro believed the car's driver was Eric, who was the subject of an arrest warrant. Therefore, the trial court's finding of fact III is supported by substantial evidence.

2.      Finding of Fact IV

Salas challenges finding of fact IV, which states: "That Officer Forbragd recognized Eric Salas because he previously looked at Eric Salas' booking photographs." CP at 71. Salas argues that Officer Forbragd could not have recognized the driver as Eric because the photos that Officer Forbragd looked at show that Eric has a distinctive neck tattoo, which Salas does not have.

At the CrR 3.6 suppression hearing, Officer Forbragd testified that he had received a picture and verbal description of Eric. In the picture, Eric had a neck tattoo. Forbragd was not able to see whether or not the driver had a neck tattoo as he passed because Salas was wearing a jacket. When he pulled Salas over, he was not paying attention to whether or not there was a tattoo. Further, Forbragd testified that he observed a vehicle being driven by a male who matched the description he had been given for the arrest warrant.

Based on the record, the evidence is sufficient to persuade a fair-minded rational person that Officer Forbragd recognized Eric Salas because he previously looked at Eric's booking photographs. Therefore, finding of fact IV is supported by substantial evidence.

C. SCOPE OF THE TERRY STOP

Salas argues that the trial court erred by failing to suppress the evidence derived from his unlawful detention. Salas appears to make two different arguments—first, that because of Eric's distinctive neck tattoo, Officer Forbragd should not have stopped him because Forbragd should have known that Salas was not Eric; and second, that once he produced his identification card and Forbragd determined that he was Derrick, not Eric, the seizure should have stopped. Salas contends that because his convictions are based on evidence that are fruit of the poisonous tree, this case must be dismissed. We disagree.

1. The Initial Investigative Stop

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution demand that an officer have a warrant before seizing an individual unless an exception to the warrant requirement applies. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d

530 (2017). One such exception allows an officer to conduct a brief investigative stop known as a *Terry* stop. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). A *Terry* stop is permissible if the "officer has a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). Article I, section 7 of our state Constitution provides broader protections than the Fourth Amendment and generally requires that the available facts "substantiate more than a mere generalized suspicion that the person detained is 'up to no good.'" *Z.U.E.*, 183 Wn.2d at 618 (quoting *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009)). "[T]he facts must connect the particular person to the *particular crime* that the officer seeks to investigate." *Id.* (emphasis in original).

"When reviewing the merits of an investigatory stop, a court must evaluate the totality of circumstances presented to the investigating officer." *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). Among the factors to consider when evaluating whether the stop was proper are the officer's training and experience, the location of the stop, and the conduct of the detainee. *Acrey*, 148 Wn.2d at 747. To an extent, reasonableness of the stop depends on the seriousness of the suspected criminal conduct. *State v. McCord*, 19 Wn. App. 250, 253, 576 P.2d 892, *review denied*, 90 Wn.2d 1013 (1978).

In *State v. Bonds*, police officers conducted a traffic stop. 174 Wn. App. 553, 557-58, 299 P.3d 663, *review denied*, 178 Wn.2d 1011 (2013). One of the reasons for the traffic stop was that the officers "believed" the passenger of the car was Bonds, who had a warrant for his arrest. *Id*.

10

The police officer asked Bonds to produce a form of identification to confirm his suspicions. *Id.* at 558. The court held that the traffic stop was justified because:

> The trial court's findings demonstrate that, although [the officer] was not absolutely certain that Bonds was the car's passenger, he believed it enough to perform a traffic stop. And [the officer's] belief in Bonds's identity and both officers' belief that he had an outstanding warrant were based on information learned from the DOC officer with whom they worked daily. Thus, their beliefs were based on specific and articulable facts, not a mere hunch. Accordingly, the trial court's findings support its conclusion that reasonable suspicion that Bonds was the passenger and had an outstanding arrest warrant justified the investigative detention.

*Id.* at 567.

Here, like in *Bonds*, Officer Forbragd believed the vehicle's driver was Eric, whom Forbragd was told was associated with the house where they were about serve a search warrant and who had a warrant for his arrest. Forbragd's belief that the driver was Eric was based on the fact the driver of the vehicle looked like the person in Eric's booking photo and fit the description Forbragd had been given. Also, Forbragd's belief that Eric was the vehicle's driver was reinforced when Sergeant Renfro radioed Forbragd, said that he thought the driver was Eric, and instructed Forbragd to stop the vehicle. Renfro knew that the vehicle had been parked at the house numerous times, recalled that Eric was associated with the vehicle, and also believed that Eric was the driver. As to Eric's distinctive neck tattoo, Forbragd was not able to see whether or not the driver had a tattoo because the driver was wearing a jacket. Thus, Forbragd's belief that Eric was the driver of the vehicle and had a warrant out for his arrest was based on specific and articulable facts, not a mere hunch. Therefore, the officers had reasonable suspicion to initiate the *Terry* stop.

11

2.     Scope of the Investigative Stop

"[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).  Whether an officer has exceeded the scope of a *Terry* stop is a fact specific inquiry.  *State v. Wheeler*, 43 Wn. App. 191, 195, 716 P.2d 902 (1986), *aff'd* 108 Wn.2d 230 (1987).  The stop must last no longer than necessary and employ the least intrusive means available to verify or dispel the reasonable suspicion. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).  Similar to the analysis for determining the validity of the stop, the proper scope of a *Terry* stop depends on "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *State v. Williams*, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984).  An officer must release the individual if the initial results of the stop dispel the officer's suspicions, but results that confirm the suspicions, or arouse further suspicions, permit an extended seizure. *Acrey*, 148 Wn.2d at 747.

Salas relies on *State v. Penfield*, 106 Wn. App. 157, 22 P.3d 293 (2001), for the proposition that Officer Forbragd should have terminated the *Terry* stop after Salas showed him his identification card, which confirmed that he was Derrick, not Eric.  In *Penfield*, the police officer ran a license check on a car and discovered that the driver's license of the registered owner, a woman, had been suspended.  *Id*. at 159.  After stopping and approaching the car, the officer noticed that the driver was a man.  *Id*.  Nevertheless, the officer asked the driver, Penfield, for his license, which had been suspended.  *Id*.  When Penfield identified himself, the officer recognized

12

the name and knew Penfield had an outstanding arrest warrant. *Id*. The officer arrested Penfield. *Id*. The court held that the officer could not point to any articulable suspicion of criminal activity once it became clear that the driver was not the registered owner, and thus, the officer violated Penfield's rights when he asked Penfield to show his driver's license. *Id*. at 161-63. The court stated that the fact that the registered owner was a woman and the driver was a man indicated conclusively that the driver was not the person he was looking for. *Id*. at 161. However, "[o]ther facts indicating discrepancies between the description of the owner and the physical attributes of the driver may not be so conclusive as to negate the officer's reasonable, articulable suspicion." *Id*.

Here, after Officer Forbragd stopped the car, he asked the driver for his driver's license to verify that the driver was Eric. In response to the request for a driver's license, Salas produced a Washington identification card. While the presentation of the identification card made it clear that the driver was not whom the officers thought, the failure of Salas to present a valid driver's license upon request aroused a reasonable, articulable suspicion that Salas was driving without a driver's license. This reasonable, articulable suspicion permitted an extended seizure.

Unlike in *Penfield*, where the officer knew conclusively before he even asked Penfield for his license that the driver was not the person he thought, Officer Forbragd did not have this evidence until after he asked for the driver's license and Salas gave him his identification card. Additionally, the discrepancies in the physical attributes between Eric and Salas were not as great as those in *Penfield* and would not negate Officer Forbragd's reasonable, articulable suspicion developed after Salas handed him an identification card in response to a request for a driver's

13

license. In fact, the evidence shows that Salas was wearing a jacket, so Forbragd was not able to see a tattoo. Therefore, Officer Forbragd did not exceed the scope of the *Terry* stop.

D.  PRETEXTUAL STOP

Salas argues that the traffic stop was an unconstitutional pretextual stop "for a criminal investigation." Br. of App. at 22. Salas asserts that there was no evidence of a driving infraction and Officer Forbragd "acknowledged that he was told by Sergeant Renfro that he thought the truck was associated with the house, and that it was being driven by the probable cause suspect." Br. of App. at 22. Salas contends that "[t]he totality of the circumstances reveals the real reason for the stop w[as] to check Mr. Salas for evidence of drug activity, in conjunction with the suspected illegal activity at Eric Salas' house." Br. of App. at 25.

Salas raises this issue for the first time on appeal. In general, we do not address claims of error raised for the first time on appeal. RAP 2.5(a). But RAP 2.5(a)(3) provides an exception to this general rule where an appellant can show a manifest error affecting a constitutional right. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). To show manifest error, the appellant must demonstrate actual and identifiable prejudice to his constitutional rights at trial. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). To demonstrate actual prejudice in this context, the appellant must show that the trial court would have excluded evidence in response to a suppression motion raising these claims and that such exclusion would have had a practical or identifiable consequence at trial. *Gordon*, 172 Wn.2d at 676.; *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

Here, Salas neither argues nor shows that the alleged error was a manifest error. Salas fails to even cite to RAP 2.5(a)(3). Therefore, we will address the pretext issue only in the ineffective assistance of counsel context discussed below. *See State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002) (when an appellant fails to provide argument or authority, this court is not "required to construct an argument on behalf of appellants").

E.      INEFFECTIVE ASSISTANCE OF COUNSEL

Salas argues that his trial counsel was ineffective for "failing to move to suppress the evidence obtained in the search on the basis of a pretext stop." Br. of App. at 25-26. We disagree.

1.      Legal Principles

We review ineffective assistance of counsel claims de novo. *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). In reviewing ineffective assistance of counsel claims, we begin with a strong presumption of counsel's effectiveness. *McFarland,* 127 Wn.2d at 335. A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Id*. at 700. "[I]n the context of the failure to bring a motion to suppress, counsel can only have been ineffective if it can be shown that the motion likely would have been granted." *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017).

The defendant must show in the record the absence of a legitimate strategic or tactical reason supporting the challenged conduct of omission by counsel. *McFarland*, 127 Wn.2d at 336.

15

This court will not consider matters outside the record on direct appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Thus, if, "'a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed [and heard] concurrently with the direct appeal.'" *Id*. (alterations in original) (quoting *McFarland*, 127 Wn.2d at 336).

2.      No Pretextual Stop

Under Article I, section 7, pretextual traffic stops are unconstitutional. *State v. Ladson*, 138 Wn.2d 343, 358, 979 P.2d 833 (1999). A traffic stop is pretextual when an officer relies on some legal authorization as "a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement." *Id.* at 358. The *Ladson* court reasoned, "[T]he problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) which is at once lawfully sufficient but not the real reason." *Id*. at 351.

When determining whether a stop is pretextual, we consider the totality of the circumstances, including the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Id.* at 358-59. "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Id.* at 359.

Pretextual stops "'generally take the form of police stopping a driver for a minor traffic offense to investigate more serious violations—violations for which the officer does not have

probable cause.'" *State v. Quezadas-Gomez*, 165 Wn. App. 593, 600-01, 267 P.3d 1036 (2011) (quoting *State v. Myers*, 117 Wn. App. 93, 94-95, 69 P.3d 367 (2003), *review denied*, 150 Wn.2d 1027, 82 P.3d 242 (2004)), *review denied*, 173 Wn.2d 1034 (2012). "[A] traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." *State v. Arreola*, 176 Wn.2d 284, 297, 290 P.3d 983 (2012). Additionally, when officers have probable cause to arrest a suspect for a felony unrelated to a traffic offense, they may stop him when he is driving. *See Quezadas-Gomez*, 165 Wn. App. at 602-03.

Here, Officer Forbragd and Sergeant Renfro believed that the driver of the truck was Eric. The stop occurred near Eric's house. The officers had an arrest warrant for Eric and thus had probable cause to arrest unrelated to a traffic offense. A driving infraction is not necessary to conduct a *Terry* stop. *See Arreola*, 176 Wn.2d at 297; *Quezadas-Gomez*, 165 Wn. App. at 602-03. The totality of the circumstances, including the officers' subjective belief that the driver was Eric and the objective reasonableness of the officers' belief based on the proximity of the vehicle to the house, do not show that the stop was pretextual. Rather, the stop was based on a reasonable, articulable suspicion that the driver was the probable cause suspect, Eric. Therefore, defense counsel's performance was not deficient because any motion to suppress defense counsel may have made to the trial court would not have succeeded.

Salas is unable to meet his burden to show ineffective assistance of counsel because he cannot establish deficient performance. Thus, Salas's ineffective assistance of counsel claim fails.

No. 52482-1-II

F.      COMMUNITY CUSTODY SUPERVISION FEES

Salas argues that the trial court erred by imposing the community custody supervision fee. The State concedes that the imposed community custody supervision fees should be stricken. In light of the 2018 legislative amendments to RCW 10.01.160(3) and the trial court's finding that Salas is indigent, we accept the State's concession and remand to the trial court to strike the community custody supervision fees from Salas's judgment and sentence.

We affirm Salas's convictions but remand for the trial court to strike the community custody supervision fees from Salas's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

18