# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48118-9-II |
| Respondent, | |
| v. | |
| DARIAN DEMETRIUS LIVINGSTON, | PART PUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Darian Demetrius Livingston appeals his bench trial convictions for three counts of unlawful possession of a controlled substance and one count each of first degree unlawful possession of a firearm and bail jumping.  He argues that the trial court erred (1) by denying his motion to suppress the evidence discovered during the search of his vehicle following his arrest on a Department of Corrections (DOC) warrant and (2) by concluding that he did not establish that uncontrollable circumstances caused his failure to appear.  In the published portion of this opinion, we agree with *State v. Jardinez*,[1] which requires that a nexus between the community custody violation and the searched property must exist before a search under RCW 9.94A.631(1) is proper. Because the trial court did not apply this law when it considered Livingston's suppression motion, we reverse the order denying the motion to suppress and remand.  In the unpublished portion of

---

[1] 184 Wn. App. 518, 338 P.3d 292 (2014).

this opinion, we hold that the trial court did not err when it concluded that Livingston failed to establish that uncontrollable circumstances prevented his appearance at the court date he missed because he was in custody on another matter. Finally, we decline to address the issues Livingston raises in his statement of additional grounds for review[2] (SAG). Accordingly, we affirm the bail jumping conviction and the unlawful possession of a controlled substance conviction charged as count II[3] and remand for further proceedings consistent with this opinion.

## FACTS

### I. BACKGROUND

#### ARREST AND SEARCH[4]

On May 29, 2014, DOC Officer Thomas Grabski observed a person, later identified as Livingston, who he recognized as having an outstanding DOC arrest warrant; Livingston was washing a vehicle alone at a car wash. Officer Grabski called for assistance, and two more officers arrived to assist him.

When the additional officers arrived, Livingston was talking with a person on a motorcycle. The person on the motorcycle drove away when the officers approached. Livingston was the only

---

[2] RAP 10.10.

[3] Count II, the conviction for unlawful possession of cocaine, was based on the discovery of additional controlled substances on Livingston's person during the booking process and was not related to the vehicle search that he is challenging on appeal. Although Livingston does not distinguish this conviction from his other convictions and asks that all of his convictions be reversed, none of the arguments he raises on appeal relate to this conviction, and we affirm it.

[4] Unless otherwise noted, the facts in this subsection are based on the unchallenged findings of fact and conclusions of law from the suppression hearing. *See State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015) ("Unchallenged findings of fact are verities on appeal."), *review denied*, 185 Wn.2d 1032 (2016).

person near the vehicle. After confirming Livingston's identity and the warrant, the officers arrested Livingston.

The officers then asked Livingston about the vehicle he had been washing. Livingston first told them that it belonged to his girlfriend who had gone to a nearby store, but he later admitted that his girlfriend was in Seattle and could not pick up the vehicle. Livingston also admitted that he regularly drove the vehicle and that he had placed the key on the motorcycle when he first saw the officers.

At the time of his arrest, Livingston was on active DOC probation. The DOC warrant issued in his name stated that there was "reasonable cause to believe [Livingston] ha[d] violated a condition of community custody." Clerk's Papers (CP) at 113. The trial court made no finding as to the nature of the violation that the warrant was based on. Nor, based on the record before us, was there any evidence presented at the suppression hearing establishing what the violation was. DOC Officers Grabski and Joshua Boyd conducted a "compliance search" of the vehicle.[5] CP at 113. When they conducted the search of the vehicle, the officers did not have any information about the nature of the violation that triggered the issuance of the DOC warrant.

Inside the vehicle, the officers found mail and other documents with Livingston's name on them, a single pill, and a prescription bottle containing eight pills. In the vehicle's trunk, the officers found a black backpack containing scented oils, a loaded .40 caliber handgun, a box of

---

[5] Livingston assigns error to the trial court's finding that this was a "compliance search," but he does so in the context of arguing that the search was not a lawful search because it was not related to the alleged violation that resulted in the arrest warrant. Thus, we do not address this assignment of error separately as a challenge to the trial court's finding of fact.

3

No. 48118-9-II

ammunition, and more mail addressed to Livingston. During booking, Livingston revealed that he was also carrying a baggie of cocaine on his person.

## II. PROCEDURE

### SUPPRESSION MOTION

The State filed an amended information charging Livingston with first degree unlawful possession of a firearm[6] (count I), unlawful possession of a controlled substance with intent to deliver (cocaine)[7] (count II), bail jumping[8] (count III), unlawful possession of a controlled substance (oxycodone)[9] (count IV), and unlawful possession of a controlled substance (hydrocodone/dihydrocodeinone)[10] (count V). Before trial, Livingston moved to suppress the evidence discovered during the vehicle search.

Livingston argued, in part, that the existence of the DOC warrant did not "give[ ] rise to reasonable suspicion justifying a search of a vehicle they believed him to have control over" and that the officers had to have a well-founded suspicion that a violation had occurred that justified this search. CP at 67. The State argued that the search was lawful because the officers had reasonable cause to believe that Livingston had violated a condition or requirement of his sentence because of the DOC warrant.

---

[6] RCW 9.41.040(1)(a).

[7] RCW 69.50.401(1), (2)(a). This charge relates to the drugs discovered when the officers were booking Livingston.

[8] RCW 9A.76.170(1), (3)(c).

[9] RCW 69.50.4013(1).

[10] RCW 69.50.4013(1).

4

The trial court denied the motion to suppress. Its findings of fact are described above. Based on these facts and the parties' arguments, the trial court concluded that the vehicle search was proper because (1) Officer Grabski had reasonable cause to believe that Livingston had "violated a condition or requirement of his or her sentence," (2) the search of the vehicle was therefore authorized under RCW 9.94A.631, and (3) the search was "a true probationary search and not an investigatory search." CP at 116.

## ANALYSIS

### DENIAL OF SUPPRESSION MOTION

Livingston first argues that the trial court erred when it concluded that the vehicle search was lawful under RCW 9.94A.631(1) because the officers had a reasonable belief that he had violated *a* community custody condition or sentencing requirement. He asks that we follow the decision of Division Three of this court in *Jardinez* and hold that to justify such a search, the property searched must relate to the violation that the community custody officer (CCO) believed had occurred. The State argues that we should decline to follow *Jardinez* and, instead, hold that the plain language of RCW 9.94A.631(1) does not impose a nexus requirement and follow our prior decision in *State v. Parris*, 163 Wn. App. 110, 259 P.3d 331 (2011). We agree with Livingston and hold that for the warrantless search to be valid under RCW 9.94A.631(1), the State had to establish that there was a relationship between the alleged violation and the searched property.

## A.  LEGAL PRINCIPLES

We review a trial court's conclusions of law de novo.  *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015), *review denied*, 185 Wn.2d 1032 (2016).  This issue requires us to construe RCW 9.94A.631(1).

In construing a statute, our objective is to determine the legislature's intent.  *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).  "'[I]f the statute's meaning is plain on its face, then [we] must give effect to that plain meaning as an expression of legislative intent.'"  *Jacobs*, 154 Wn.2d at 600 (first alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).  We discern the "plain meaning" of a statutory provision from the ordinary meaning of the language and from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.  *Jacobs*, 154 Wn.2d at 600.  If a statute is susceptible to more than one reasonable interpretation, it is ambiguous.  *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011).  We may resort to legislative history for guidance in discerning legislative intent.  *Anthis v. Copland*, 173 Wn.2d 752, 756, 270 P.3d 574 (2012).

## B.  NEXUS REQUIRED

Both article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution prohibit warrantless searches unless an exception exists.  *Rooney*, 190 Wn. App. at 658.  Washington law recognizes, however, that probationers and parolees have a diminished right of privacy that permits warrantless searches based on reasonable cause to believe that a violation of probation has occurred.  *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009); *Jardinez*, 184 Wn. App. at 523.

This reduced expectation of privacy is recognized in RCW 9.94A.631(1), which states,

> If there is reasonable cause to believe that an offender has violated *a* condition or requirement of the sentence, a [CCO] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

(Emphasis added.) The question we must answer here is the scope of RCW 9.94A.631(1)— specifically whether the statute's reference to a violation of "*a*" condition or requirement of the sentence allows officers to conduct searches regardless of whether there is any nexus between the violated condition and the searched property.

In *Jardinez*, Division Three examined this issue and held that RCW 9.94A.631(1) was ambiguous because it could be read to allow either "an unlimited scope of the search" or "to limit the search to areas or property about which the [CCO] has reasonable cause to believe will provide incriminating evidence." 184 Wn. App. at 526. We agree with the *Jardinez* court that the phrase "has violated *a* condition or requirement of the sentence" is ambiguous.[11] RCW 9.94A.631(1) (emphasis added). Because this statute is ambiguous, we next examine the legislative history of this statute to determine the legislative intent.

In *Jardinez*, Division Three examined the following official comment from the Sentencing Guidelines Commission (Commission) on RCW 9.94A.631(1):

> "The Commission intends that [CCOs] exercise their arrest powers sparingly, with due consideration for the seriousness of the violation alleged and the impact of confinement on jail population. Violations may be charged by the [CCO] upon notice of violation and summons, without arrest.
> *The search and seizure authorized by this section should relate to the violation which the [CCO] believes to have occurred.*"

---

[11] Furthermore, if the legislature had intended to allow any violation to justify a search of any property, the legislature could have referred to the violation of *any* condition or requirement, which it did not do.

*Jardinez*, 184 Wn. App. at 529 (quoting David Boerner, *Sentencing in Washington: A Legal Analysis of the Sentencing Reform Act of 1981*, at app. 1-13 (1985)). Noting that Washington courts "have repeatedly relied on the Commission's comments as indicia of the legislature's intent," Division Three concluded that the italicized portion of this comment "demands a nexus between the searched property and the alleged crime." *Jardinez*, 184 Wn. App. at 529-30.

We agree with Division Three's conclusion that the Commission's comment is strong evidence that the legislature intended that there must be a nexus between the suspected violation and the searched property. Accordingly, we adopt the approach in *Jardinez* and hold that a valid search under RCW 9.94A.631(1) requires that there be a nexus between the alleged violation and the searched property.

The State argues that we should instead adopt the approach we previously took in *Parris*. We disagree.

In *Parris*, our focus was on a probationer's reasonable expectation of privacy in personal property and not on whether RCW 9.94A.631(1) was ambiguous or the legislative intent underlying RCW 9.94A.631(1). *See Parris*, 163 Wn. App. at 123. We held that Parris did not have a reasonable expectation of privacy in his effects and personal property because, as a probationer and sex offender, his belongings and effects were "continuously subject to searches and seizures under RCW 9.94A.631(1)." *Parris*, 163 Wn. App. at 123. And we further stated that "RCW 9.94A.631(1) operates as a legislative determination that probationers do not have a reasonable expectation of privacy in their residences, vehicles, or personal belongings (including closed containers) for which society is willing to require a warrant. The statute itself diminishes the probationer's expectation of privacy." *Parris*, 163 Wn. App. at 123 (footnotes omitted).

But at no point did we examine whether RCW 9.94A.631(1) was ambiguous or, if it was, whether the legislative history supported such a broad reading of the statute. *Parris*, 163 Wn. App. at 123. And our sole supporting citation was to *United States v. Conway*, 122 F.3d 841, 843 (9th Cir. 1997), a case that merely, without citation to authority or any analysis of RCW 9.94A.631(1), stated that CCOs did not have to have a reasonable belief that they would find evidence related to Conway's violation in the searched property. Thus, our decision in *Parris* does not persuade us that *Jardinez* was incorrectly decided.

Accordingly, we hold that the trial court erred when it failed to consider whether there was a nexus between the violation and the searched property, and we reverse the ruling denying Livingston's motion to suppress and remand for further proceedings.

## C. PROPOSED ALTERNATIVE GROUNDS AND REMAND

In the alternative, the State argues for the first time that the vehicle search was valid as a good faith inventory search following a lawful impoundment of the vehicle, and it asks us to affirm the trial court on this basis. Remand is appropriate. For two reasons, through no fault of the State, it had no incentive to establish the existence of a lawful alternative basis for the vehicle search. *See State v Bliss*, 153 Wn. App. 197, 207-08, 222 P.3d 107 (2009). First, the trial court agreed with the State's original argument and denied Livingston's suppression motion. Second, the State reasonably believed that they stood on solid legal ground in defending the suppression motion as they did because it is only now that we clarify for the first time that a nexus between the violation and the searched property is required. Because the State reasonably did not present this argument in the trial court, the record before us is insufficiently developed to allow review of the State's alternative argument. Thus, remand is appropriate.

Should the trial court find that the search was proper, the convictions on counts I, IV, and V, which are based on the drugs and firearm discovered in the vehicle, will stand. If, on the other hand, the trial court determines that this was not a proper search, the trial court should vacate and dismiss those convictions.[12]

We affirm Livingston's bail jumping conviction, count III, and his unlawful possession of a controlled substance conviction charged as count II. But we reverse the order denying Livingston's motion to suppress the evidence discovered in the vehicle search and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

I. BAIL JUMPING CONVICTION

A. FAILURE TO APPEAR

The State initially charged Livingston with first degree unlawful possession of a firearm and unlawful possession of a controlled substance with intent to deliver (heroin). At a preliminary hearing, Livingston signed a scheduling order setting an August 25 omnibus hearing and advising him that he was required to be present at this hearing. When he failed to appear on August 25, the trial court entered a bench warrant. On August 27, Livingston signed a scheduling order for a hearing to quash the bench warrant. The bench warrant quashed on September 4.

---

[12] We note that the remaining drug conviction and the bail jumping conviction were entirely independent of the vehicle search.

B. BENCH TRIAL

Livingston waived his right to a jury trial. At the bench trial, Officer Grabski testified that DOC documentation showed that Livingston had been in custody for failing to report to the DOC from August 6 to August 26, 2014. Officer Grabski also testified that it was Livingston's failure to report that caused him to be taken into custody during that time period.

Livingston testified that on August 25, he was in custody in another jurisdiction because he had reported to the DOC late. He testified that he was booked into the custody facility at 12:38 PM on August 6, that he had received a 20-day sanction, and that he was not released until 8:26 AM on August 26. He also testified that although he was released on August 26, the DOC actually held him an "extra day" because he had to be transferred to another facility before he was released. 4 Report of Proceedings at 396.

The trial court found Livingston guilty of first degree unlawful possession of a firearm, three counts of unlawful possession of a controlled substance (cocaine, oxycodone, and hydrocodone/dihydrocodeinone), and bail jumping. As to the bail jumping charge, the trial court entered the following findings of fact:

> 10. Defendant was able to secure his release by posting a bail bond on July 3, 2014.
> 11. On July 29, 2014, defendant signed a Scheduling Order, which set an Omnibus Hearing for August 25, 2014 at 8:45 a.m. The document ordered the defendant to be present at the hearing and informed the defendant that failure to appear will result in a warrant being issued for his arrest. The Order also provided the address of the courthouse and particular courtroom where defendant was to appear.
> 12. Defendant did not appear in court as ordered on August 25, 2014 and a warrant was issued for his arrest.
> 13. Defendant was incarcerated from August 6 until August 26, 2014 at the SCORE jail due to violations of the conditions of his community custody with the Department of Corrections.

No. 48118-9-II

CP at 104-05.

The trial court rejected Livingston's uncontrollable circumstances defense, concluding that

[d]efendant has not shown that his incarceration in the SCORE jail for violating his conditions of DOC supervision meets the definition of uncontrollable circumstances. The probation violation which resulted in defendant's incarceration was not an act of God. Defendant's own actions resulted in the probation violation which caused him to be incarcerated and thus fail to personally appear in court.

CP at 108.

Livingston appeals the denial of his suppression motion and his convictions.

Livingston argues that the trial court erred when it concluded that he failed to establish his uncontrollable circumstances defense to the bail jumping charge. We disagree.

To establish this defense, Livingston had to prove that (1) "uncontrollable circumstances prevented [him] from appearing or surrendering," (2) he "did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender," and (3) he "appeared or surrendered as soon as such circumstances ceased to exist." RCW 9A.76.170(2). Livingston now contends that (1) the facility that was holding him released him a day late, (2) he did not contribute to the creation of these circumstances in reckless disregard of the requirement to appear because he "had every reason to believe that he would be released in time to attend the scheduled hearing," and (3) he appeared as soon as circumstances allowed. Br. of Appellant at 18-19.

As to his contention that he was released a day late, suggesting that he had expected to be released on August 25 and, therefore, did not contribute to the creation of the circumstances that caused him to miss his court date, his own testimony belies this assertion. Although Livingston

12

testified that he was released a day late, he also testified that he was booked on August 6 and that he received a 20-day sanction. His release on August 26 is consistent with the 20-day sanction.

As to his assertion that he appeared in court as soon as circumstances allowed, we need not address this element because the trial court properly concluded that Livingston failed to establish the other elements of this defense. Accordingly, Livingston does not show that the trial court erred in concluding that he failed to establish the uncontrollable circumstances defense, and we affirm his bail jumping conviction.

## II. SAG

Livingston also filed a SAG. His SAG contains no argument and identifies no issues. It consists entirely of a list of citations to case law related to (1) sufficiency of evidence of constructive possession, (2) unwitting possession, and (3) warrantless searches.

Because Livingston was convicted of four possessory offenses, the citations relating to constructive possession and unwitting possession are not specific enough to inform us of the nature and occurrence of any specific errors. RAP 10.10(c). Accordingly, we do not address the cases relating to constructive possession or unwitting possession. And because Livingston's appellate counsel has challenged the vehicle search and Livingston does not present any additional search-related issues that justify independent review, we do not address the search-related cases that Livingston cites.

In summary, we affirm Livingston's bail jumping conviction and his unlawful possession of a controlled substance conviction charged as count II. But we reverse the order denying

13

Livingston's motion to suppress the evidence discovered in the vehicle search and remand for further proceedings consistent with this opinion.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.