## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50236-4-II |
| Respondent, | |
| v. | |
| DARIAN DEMETRIUS LIVINGSTON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — Darian Demetrius Livingston appeals his convictions for two counts of unlawful possession of a controlled substance and one count of unlawful possession of a firearm in the first degree.

Livingston previously appealed these convictions. In his first appeal, he argued that the trial court erred by denying his motion to suppress the evidence discovered during the search of his vehicle following his arrest on a Department of Corrections (DOC) warrant. We agreed and remanded the matter back to the trial court. *State v. Livingston*, 197 Wn. App. 590, 592, 389 P.3d 753 (2017) (*Livingston* I).

On remand, the trial court concluded a nexus existed between Livingston's probation violation and the vehicle searched. Livingston again appeals, this time contending that the State argued matters outside the scope of this court's remand directive in *Livingston* I and that no nexus existed between the probation violation and the vehicle searched. We vacate Livingston's convictions and remand to the trial court for further proceedings.

# FACTS[1]

## I. BACKGROUND

On May 29, 2014, DOC Officer Thomas Grabski observed Livingston at a car wash. Grabski knew that Livingston had an outstanding DOC arrest warrant. Grabski called for assistance, and two Tacoma Police Department (TPD) officers arrived to assist him.

When the additional officers arrived, Livingston was talking with a person on a motorcycle. The person on the motorcycle drove away when the officers approached. Livingston was the only person near the vehicle. After confirming Livingston's identity and the warrant, the officers arrested Livingston.

The officers then asked Livingston about the vehicle he had been washing. Livingston told them that it belonged to his girlfriend who had gone to a nearby store, but he later admitted that his girlfriend was actually in Seattle and could not pick up the vehicle. Livingston also admitted that he regularly drove the vehicle and that he had placed the key on the motorcycle when he first saw the officers.

At the time of his arrest, Livingston was on active DOC probation. Grabski conducted a search of the vehicle and located mail and other documents with Livingston's name on them, a single pill, and a prescription bottle containing eight pills. In the vehicle's trunk, Grabski found a black backpack containing scented oils, a loaded .40 caliber handgun, a box of ammunition, and more mail addressed to Livingston. During booking, Livingston revealed that he was also carrying a baggie of cocaine on his person.

---

[1] Unless otherwise indicated, the following facts derive from *Livingston* I, 197 Wn. App. at 593-95.

The State charged Livingston with unlawful possession of a firearm in the first degree; unlawful possession of a controlled substance with intent to deliver, cocaine; bail jumping; unlawful possession of a controlled substance, oxycodone; and unlawful possession of a controlled substance, hydrocodone/dihydrocodeinone.

II.     FIRST SUPPRESSION MOTION

Before trial, Livingston moved to suppress the evidence discovered during the vehicle search. The trial court denied the motion to suppress. The court concluded that the vehicle search was proper because Grabski had reasonable cause to believe that Livingston had violated a condition or requirement of his sentence; therefore, the search of the vehicle was authorized under RCW 9.94A.631. Additionally, the search was a probationary search and not an investigatory search. Following a bench trial, the court convicted Livingston of all counts. Livingston appealed.

III.     *LIVINGSTON* I

On appeal, we remanded the suppression order pertaining to the convictions for unlawful possession of a firearm in the first degree, unlawful possession of oxycodone, and unlawful possession of hydrocodone/dihydrocodeinone. We affirmed the other convictions. *Livingston* I, 197 Wn. App. at 600.

We held "that the trial court erred when it failed to consider whether there was a nexus between the violation and the searched property" and remanded "for further proceedings" on the three counts. *Livingston* I, 197 Wn. App. at 599.[2]

---

[2] In *Livingston* I, the State argued for the first time that the vehicle search constituted a valid inventory search. *Livingston* I, 197 Wn. App. at 600-01. We allowed the State to argue on remand that an inventory search took place. On remand, the State conceded that no valid inventory search occurred.

IV.    PROCEEDINGS ON REMAND

After we remanded the case, the trial court held a suppression hearing.  At the hearing, Grabski testified that a TPD officer informed him that Livingston had a warrant for his arrest. Grabski assumed the warrant was for failure to report because in his experience that is "mostly" why warrants are issued.  1 Report of Proceedings (RP) at 20.  Also, at the hearing, the State sought to introduce DOC records on Livingston.  Livingston objected.  The trial court sustained the objection based on lack of foundation because there was no evidence Grabski had this information before searching the vehicle.  The court denied the motion and entered the following relevant written findings of fact and conclusions of law:

THE UNDISPUTED FACTS[3]

5.  Officer Young also recognized defendant as he grew up with him, although he could not immediately recall defendant's name.  Officer Young contacted defendant, and engaged him in a casual conversation. When Officer Young asked defendant his name, defendant did not want to provide it and questioned why. Officer Young informed defendant that he had a DOC warrant. Defendant's head went down and he responded, "yeah."  Officer Young confirmed the DOC warrant and informed Officer Grabski of the warrant and that defendant was on supervision for Unlawful Possession of a Controlled Substance.

. . . .

8.  Some of the other conditions of supervision which are imposed on defendants who are under supervision for narcotics offenses include reporting to the DOC, providing a valid address, a chemical dependency evaluation and follow up with treatment along with not using or possessing controlled substances.  In Officer Grabski's experience, these conditions are imposed on 100% of offenders who are being supervised for narcotics offenses.

---

[3] The trial court labeled the findings of fact "THE UNDISPUTED FACTS" and the conclusions of law "REASONS FOR ADMISSIBILITY OR INADMISSIBILITY OF EVIDENCE."  Clerk's Papers (CP) at 43, 46

The violation for which the DOC secretary warrant was issued for defendant's arrest was failure to report to DOC (absconding from supervision) and failure to complete substance abuse treatment.

. . . .

12. Officer Grabski conducted a warrantless search of the vehicle pursuant to DOC's authority to conduct compliance searches under RCW 9.94A.631.

13. Officer Grabski believed that he would find documents inside the vehicle that would provide a current address where defendant was residing or staying. Officer Grabski also believed that he would find evidence that would verify whether or not defendant was using controlled substances such as controlled substances themselves and/or paraphernalia.

Clerk's Papers (CP) at 44-45.

### REASONS FOR ADMISSIBILITY OR INADMISSIBILITY OF THE EVIDENCE

. . . .

2. The alleged violation in this case was Failure to Report to the Department of Corrections. The issue therefore is what does failure to report mean?

3. The court focuses its analysis on what did Officer Grabski know and when did he know it based on Officer Grabski's experience.

. . . .

8. The violation in this case was failure to report, not failure to appear. This type of DOC secretary's warrant issues when someone has absconded from supervision. A compliance check is broader when a warrant is issued for this type of violation as the violation encompasses multiple issues.

9. The compliance check was conducted to verify defendant's residence and verify whether or not defendant had been using narcotics.

. . . .

11. Based on the evidence the court finds that there is a nexus between the alleged violation (of failure to report/absconding from supervision) and the search of the vehicle.

12. Given the information known to Officer Grabski and taking into consideration Grabski's experience, there was reasonable cause to believe that evidence of the violation of Failure to Report would be found in the vehicle. The search of the vehicle was therefore proper.

CP at 46-47. Livingston appeals.

## ANALYSIS

I.    MATTERS OUTSIDE REMAND ORDER

Livingston first argues that the State argued matters outside this court's remand instructions in *Livingston* I by arguing that a nexus existed between the violation and the searched property. He argues the sole issue on remand was whether there was a valid good faith inventory search. We disagree.

### A.    Standard of Review

"Following a mandate for further proceedings, a trial court must comply with that mandate, and we review the trial court's compliance for an abuse of discretion." *Kruger-Willis v. Hoffenburg*, 198 Wn. App. 408, 414, 393 P.3d 844, *review denied*, 189 Wn.2d 1010 (2017). A trial court abuses it discretion when its decision is based on untenable grounds or reasons. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). A trial court's discretion on remand is limited by the scope of the appellate court's mandate. *State v. Kilgore*, 167 Wn.2d 28, 42, 216 P.3d 393 (2009).

### B.    No Abuse of Discretion

In *Livingston* I, we held "that the trial court erred when it failed to consider whether there was a nexus between the violation and the searched property" and remanded "for further proceedings" on the one count of unlawful possession of a firearm in the first degree and two

6

counts of unlawful possession of a controlled substance. 197 Wn. App. at 599. Based on our holding, Livingston's argument that we remanded solely on the issue of whether there was a valid good faith inventory search is without merit.

II. SUFFICIENT NEXUS BETWEEN SUSPECTED PROBATION VIOLATION AND PROPERTY SEARCHED

Livingston next argues that the trial court erred by concluding a sufficient nexus existed between his probation violation and the vehicle searched. We agree.

A. Standard of Review

Following a suppression hearing, we review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Unchallenged findings are verities on appeal, and challenged findings supported by substantial evidence are binding. *O'Neill*, 148 Wn.2d at 571.[4] We review the trial court's conclusions of law following a suppression hearing de novo. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We affirm conclusions of law that are supported by the findings of fact. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

B. Legal Principles

Unless an exception is present, a warrantless search is impermissible under article I, section 7 of the Washington Constitution. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). The trial court suppresses evidence seized from an illegal search under the exclusionary rule. *Gaines*, 154 Wn.2d at 716-17.

---

[4] Livingston also argues that substantial evidence does not support undisputed facts 5, 8, 12, and 13 and that the findings of fact do not support reasons for admissibility or inadmissibility of evidence 2, 3, 8, 9, and 12. Based on our disposition of this case, we need not reach this issue.

Probationers[5] have diminished privacy rights because they are persons whom a court has sentenced to confinement but who "are 'serving their time outside the prison walls.'" *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018) (quoting *State v. Olsen*, 189 Wn.2d 118, 124, 399 P.3d 1141 (2017)). RCW 9.94A.631(1) states, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." This statute has been interpreted to mean that it is constitutionally permissible for a community corrections officer (CCO) to search an individual based on a reasonable suspicion of a supervision violation; but, to search the person's property, there must be "a nexus between the property . . . and the alleged probation violation." *Cornwell*, 190 Wn.2d at 306.

C.    *State v. Cornwell*

Cornwell issued after the court denied Livingston's suppression motion on remand. In *Cornwell*, the defendant violated his supervision by failing to report to DOC, and DOC issued a warrant for his arrest. 190 Wn.2d at 298. Cornwell's CCO[6] spotted a Chevrolet Monte Carlo that Cornwell was known to drive outside a home suspected of being a site for drug sales and prostitution. *Cornwell*, 190 Wn.2d at 298. A TPD officer conducted a records check on Cornwell and learned he had an outstanding warrant. *Cornwell*, 190 Wn.2d at 298. No contact was made at that time.

---

[5] We use this term to refer to individuals on community custody.

[6] Coincidentally, Cornwell's CCO was also Grabski.

Later, the same TPD officer spotted Cornwell driving the Monte Carlo. *Cornwell*, 190 Wn.2d at 298. The officer intended to stop the vehicle but before he could activate his lights, the vehicle pulled into a driveway and Cornwell ran off. *Cornwell*, 190 Wn.2d at 299. He was later apprehended. *Cornwell*, 190 Wn.2d at 298. Grabski arrived on the scene and searched the Monte Carlo, finding a bag containing controlled substances, drug paraphernalia and other property. *Cornwell*, 190 Wn.2d at 299. A jury found Cornwell guilty. *Cornwell*, 190 Wn.2d at 300.

In reversing the convictions, the court held, "article I, section 7 permits a warrantless search of the property of an individual on probation only where there is a nexus between the property searched and the alleged probation violation." *Cornwell*, 190 Wn.2d at 306. The court reasoned that "individuals on probation do not forfeit all expectations of privacy in exchange for their release into the community." *Cornwell*, 190 Wn.2d at 303. Allowing searches without a nexus could permit "'a fishing expedition to discover evidence of other crimes, past or present.'" *Cornwell*, 190 Wn.2d at 304 (internal quotation marks omitted) (quoting *Olson*, 189 Wn.2d at 134). "Individuals on probation have a limited, but constitutionally protected, privacy interest that does not permit CCOs to conduct open-ended property searches." *Cornwell*, 190 Wn.2d at 307.

Applying the court's nexus requirement to Cornwell's search, the court concluded "CCO Grabski's search of Cornwell's car exceeded its lawful scope." *Cornwell*, 190 Wn.2d at 306. While CCO Grabski may have suspected that Cornwell violated other probation conditions, the only probation violation supported by the record was Cornwell's failure to report. And there is no nexus between failing to report and searching a vehicle. *Cornwell*, 190 Wn.2d at 306.

The court in Cornwell cites *State v. Parris*, 163 Wn. App. 110, 259 P.3d 331 (2011) as an example of where a nexus between the violation and the property exists to warrant a search. Parris was on probation after he failed to register as a sex offender. *Cornwell*, 190 Wn.2d at 305 (citing *Parris*, 163 Wn. App at 113). He violated numerous probation conditions, including contacting minors, failing a urinalysis test, and failing to participate in treatment. *Cornwell*, 190 Wn.2d at 305 (citing *Parris*, 163 Wn. App at 114). Parris's mother also informed Parris's CCO that he may have obtained a firearm in violation of his probation. *Cornwell*, 190 Wn.2d at 305 (citing *Parris*, 163 Wn. App at 120). Parris's CCO searched his room, where the CCO found syringes, pornography, empty alcohol bottles, and three memory cards. *Cornwell*, 190 Wn.2d at 305 (citing *Parris*, 163 Wn. App at 115). The CCO searched the memory cards and found sexually explicit videos of Parris and a minor as well as photographs of guns. *Cornwell*, 190 Wn.2d at 305 (citing *Parris*, 163 Wn. App at 115). The court held, "A nexus between the memory cards and a suspected probation violation was undoubtedly satisfied because the CCO 'believed she might find evidence of [an illegal firearm]' on the cards." *Cornwell*, 190 Wn.2d at 305 (quoting *Parris*, 163 Wn. App at 120). The court in *Cornwell* noted that a search "tethered to a particular probation condition" furthers the State's interest in monitoring compliance with community custody conditions "while still protecting individuals from arbitrary searches." *Cornwell*, 190 Wn.2d at 305.

D.      Suppression motion

Applying the nexus requirement to this case, we conclude Grabski's search of the vehicle at the car wash was unlawful. While Grabski may have suspected Livingston violated other probation conditions (narcotics use, keeping DOC apprised of current address), the only probation violation that Grabski was "mostly" certain about was Livingston's failure to report. 1 RP at 20. Grabski testified that a TPD officer told him Livingston had a warrant for his arrest and that

10

Grabski assumed it was for failure to report. *Cornwell* determined that there is no nexus between failing to report and searching a vehicle. *Cornwell*, 190 Wn.2d at 306. Because there was no nexus to Livingston's suspected probation violation, the search of the car in Livingston's case was unlawful. The evidence seized, therefore, should have been suppressed in accordance with the exclusionary rule. *See Gaines*, 154 Wn.2d at 716-17. The court's findings of fact relating to Grabski's justification for searching the vehicle do not support the court's conclusion of law that a nexus existed between the probation violation and the vehicle searched.

E.      Fellow Officer Rule

Alternatively, the State argues the search was justified under the fellow officer rule. When examining the reasonableness of the officer's suspicion, the trial court may consider the collective knowledge of the police when they are working as a unit; this is known as the fellow officer rule. *State v. O'Cain*, 108 Wn. App. 542, 550-51, 31 P.3d 733 (2001). The State appears to argue that because DOC had complete information on Livingston this information would be imputed to Grabski and would provide the necessary nexus between a probation violation and the searched vehicle. The State bootstraps this argument to its argument that the trial court erred in excluding DOC's records. The State, however, did not cross-appeal the trial court's evidentiary ruling as required for us to review this issue. RAP 5.1(d). Because the State failed to file a notice of cross-appeal and because we do not have the DOC documents in our record to properly analyze the State's argument, we decline to address this issue further.

III.    CONCLUSION

Because a nexus did not exist between Livingston's suspected probation violation and the car at the car wash, the search was unlawful.  The evidence seized should have been suppressed. We, therefore, vacate Livingston's convictions for unlawful possession of oxycodone, unlawful possession of hydrocodone/dihydrocodeinone, and unlawful possession of a firearm in the first degree and remand to the trial court for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
                    Melnick, P.J.

We concur:

_____
    Sutton, J.

_____
    Cruser, J.