# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52809-6-II |
| Respondent, | |
| v. | |
| JOSEPH ANTHONY BONOMO, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — After a bench trial, the court convicted Joseph Anthony Bonomo of unlawful possession of a firearm, unlawful possession of a short-barreled shotgun, and unlawful possession of a controlled substance—heroin. He appeals his convictions and sentence, arguing that (1) the trial court erred when it denied his motion to suppress evidence because RCW 9.94A.631(1)[1] did not authorize community corrections officers to search the car he was driving since it belonged to his girlfriend and the officers had an insufficient nexus to search the trunk of the car, (2) the strict liability crime of simple possession of a controlled substance violates due process, and (3) the trial court imposed improper legal financial obligations (LFOs). The State concedes that Bonomo's conviction for unlawful possession of a controlled substance should be vacated and that LFOs were improperly imposed.

---

[1] RCW 9.94A.631(1) authorizes community corrections officers to "require an offender to submit to a search and seizure of the offender's person, residence, automobile or other personal property," if the officer has "reasonable cause to believe that an offender has violated a condition or requirement of the sentence."

We hold that for purposes of RCW 9.94A.631(1), Bonomo possessed the car he was driving and that after finding heroin on Bonomo's person, officers had reasonable cause to believe further evidence that he possessed controlled substances could be in the trunk of the car. Therefore, we affirm the trial court's denial of Bonomo's motion to suppress and affirm his convictions for unlawful possession of a firearm and unlawful possession of a short-barreled shotgun.

However, in light of our Supreme Court's recent opinion in *State v. Blake*, 197 Wn.2d 170, 173-74, 481 P.3d 521 (2021), invalidating the state's strict liability drug possession statute, we hold that Bonomo's conviction for unlawful possession of a controlled substance should be vacated. We also accept the State's concession regarding the LFOs. Consequently, we reverse Bonomo's conviction for unlawful possession of a controlled substance—heroin, and remand for the trial court to vacate Bonomo's controlled substance possession conviction and resentence him. At resentencing, the trial court should not impose the criminal filing fee, DNA database fee, or interest accrual.

FACTS

In April 2018, Fife police officer Mark Dorn stopped Bonomo, who was driving a car without wearing a seatbelt. Bonomo stated that his license was in suspended status. Dorn observed that Bonomo was armed with a knife in his waistband.

Shortly after Officer Dorn pulled Bonomo over, the manager of the nearby Love's truck stop approached and said that he had been "trying to make contact with [Bonomo's] vehicle" after it was "seen at numerous semis throughout the better part of the morning." 1 Verbatim Report of Proceedings (Dec. 5-6, 2018) (VRP) at 25. The manager believed that Bonomo may

have been involved in drug or prostitution-related activity. He requested that the officers issue a trespass notice to Bonomo. Officer Dorn detained Bonomo for driving while his license was suspended. Bonomo "made furtive movements and did not comply fully with Officer Dorn's instructions to exit the vehicle." Clerk's Papers (CP) at 50.

Bonomo informed officers that the vehicle belonged to his girlfriend. Dorn contacted her and confirmed that she was the car's registered owner. Dorn did not testify that he obtained the girlfriend's consent to search the vehicle.

Dorn learned that Bonomo was under active Department of Corrections (DOC) supervision in King County and was prohibited from leaving that county without written authorization. Community corrections officers were summoned, and Officers Zachary Johnson and Steven Depoister responded.

The community corrections officers arrested Bonomo for the probation violation of being outside of King County without written authorization, and Johnson conducted a "pat search" of Bonomo's person prior to his transfer to jail. VRP at 103. Johnson recovered a bag of heroin and a hypodermic needle from Bonomo's pocket.

Johnson then searched the vehicle. In the trunk of the car, Johnson found a short-barreled shotgun near Bonomo's court paperwork. Johnson also found baggies and "a huffing straw used to ingest controlled substances." CP at 50. Bonomo admitted that the shotgun was his and that he had "received it as a payment" for some other items. VRP at 45.

3

The State charged Bonomo with first degree unlawful possession of a firearm, unlawful possession of a short-barreled shotgun, unlawful possession of a controlled substance—heroin, and third degree driving with a suspended license.[2]

Bonomo waived his right to a jury trial, and the trial court simultaneously held a CrR 3.5 hearing, a CrR 3.6 hearing, and a bench trial. At the trial, witnesses testified to the above facts. Regarding his reasons for the search of the vehicle, Johnson testified that he "believed there was possible further violations inside the car" because it is "common . . . [to] find things hidden in cars out of plain view" after finding drugs on the driver's person. VRP 104-05. Depoister agreed and estimated that he discovers contraband in a car after discovering contraband on the driver's person in "[m]ore than half" of the investigations in which he is involved. VRP at 123.

The trial court entered three sets of findings of fact and conclusion of law, one for each motion and one for the trial. The court denied Bonomo's CrR 3.5 motion to suppress his statements.[3] The court also denied Bonomo's CrR 3.6 motion to suppress the evidence seized from the car and ruled that the shotgun was recovered pursuant to a valid search. The trial court found that the vehicle search was "based on [the officers'] training and experience that when a probationer has controlled substances on his person, he is likely to have controlled substances and other contraband in his vehicle." CP at 58. The trial court concluded, "Once heroin was found, the next logical nexus was to search the vehicle, including the trunk and there was

---

[2] The State dropped the driving with a suspended license charge prior to trial. That charge is not at issue on appeal.

[3] Bonomo does not appeal the court's order regarding the admission of his statements.

reasonable cause . . . that a probation violation had occurred to validate such a search." CP at 59. The trial court did not enter any findings of fact regarding who owned the car.

The trial court also found Bonomo guilty of unlawful possession of a firearm, unlawful possession of a short-barreled shotgun, and unlawful possession of a controlled substance—heroin.

At sentencing, the trial court found that Bonomo was indigent and that payment of nonmandatory legal financial obligations would be inappropriate. However, the court imposed a $200 criminal filing fee, a $100 DNA database fee, and an interest accrual provision providing, "The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full." CP at 40.

Bonomo appeals his convictions and sentence.

ANALYSIS

I. VEHICLE SEARCH

Warrantless searches are generally "per se unreasonable" under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). However, there are a few "'jealously and carefully drawn'" exceptions. *Id.* (internal quotation marks omitted) (quoting *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984)). One such exception permits community corrections officers to conduct warrantless searches of a probationer's personal property where the officer has reasonable cause to believe that the individual committed a probation violation and there is a nexus between the property to be searched and the suspected violation. RCW

9.94A.631(1); *State v. Cornwell*, 190 Wn.2d 296, 306, 412 P.3d 1265 (2018).[4]  Thus,

probationers have a diminished right to privacy under the Fourth Amendment and article 1,

section 7 of the Washington Constitution.  *State v. Lucas*, 56 Wn. App. 236, 239-40, 783 P.2d

121 (1989).

It is the State's burden to establish that an exception to the warrant requirement applies.

*Doughty*, 170 Wn.2d at 61.  The State must establish the exception by clear and convincing

evidence.  *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).  "Only facts and

knowledge available to the officer at the time of the search should be considered." *State v.*

*Winterstein*, 167 Wn.2d 620, 630, 220 P.3d 1226 (2009).

In reviewing a trial court's denial of a motion to suppress evidence, we review the trial

court's legal conclusions de novo.  *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913

(2015).  "Unchallenged findings of fact are verities on appeal." *Id.*

A.     *Statutory Authority*

Bonomo argues the community corrections officers did not have statutory authority to

conduct a warrantless search the car he was driving because RCW 9.94.631(1) is limited to

searches of "'*the offender's* . . . automobile'" and the officers knew the car was registered to

Bonomo's girlfriend. Br. of Appellant at 9 (quoting RCW 9.94.631(1)).  We disagree.

We review issues of statutory interpretation de novo. *Cornwell*, 190 Wn.2d at 300.

"[O]ur objective is to determine the legislature's intent."  *State v. Livingston*, 197 Wn. App. 590,

---

[4] RCW 9.94A.631 was amended in 2020, after Bonomo was searched.  LAWS OF 2020, ch. 82, § 2.
However, we cite to the current version of the statute because the 2020 amendments did not affect
subsection (1). Moreover, the legislature noted that this section of the act would "apply
retroactively and prospectively regardless of the date of an offender's underlying crime." *Id.* § 6.

596, 389 P.3d 753 (2017). We look to "the ordinary meaning of the language . . . the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.*

RCW 9.94A.631(1) permits community corrections officers to search "the offender's person, residence, automobile, or other personal property." The rationale for this exception to the warrant requirement is that "a person judicially sentenced to confinement but released on probation remains in the custody of the law" and, therefore, the State has a "continuing interest in supervising him." *State v. Reichert*, 158 Wn. App. 374, 386, 242 P.3d 44 (2010). Nevertheless, "[e]ven though probationers have a lessened expectation of privacy, third parties not under the control of the DOC do not." *Winterstein*, 167 Wn.2d at 630; *see also Rooney*, 190 Wn. App. at 661 ("[A] probationer's diminished expectation of privacy does not apply to his or her cohabitants.").

To protect the privacy interests of third parties, our Supreme Court has held that officers must have probable cause to believe a probationer lives at a particular residence before conducting a warrantless search of that residence. *Winterstein*, 167 Wn.2d at 630. The *Winterstein* rationale has not been expanded beyond residential searches. However, the key question in *Winterstein* was not whether the probationer owned the residence; it was whether the probationer "*live*[*d*] at the residence[]." *Id.* (emphasis added). Similarly, the key question here is not whether Bonomo owned the car; it is whether he was using the car. The important fact for community corrections officers is that the space subject to search is used by an individual whom they are responsible for supervising and, therefore, evidence of the individual's noncompliance may be present in the space. Officers have authority to search such spaces without a warrant, so

7

long as they respect the privacy interests of other individuals who use the space and are not under DOC supervision.

To address the question of who may consent to a search where there are multiple inhabitants of a residence, Washington courts adopted the common authority rule. *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005). Our Supreme Court has also applied this rule to vehicles. *See, e.g.*, *State v. Houston-Sconiers*, 188 Wn.2d 1, 28, 391 P.3d 409 (2017). Under the common authority rule, when the authority to control a space is shared, "persons necessarily assume some risk that others with authority to do so will allow outsiders into shared areas." *Morse*, 156 Wn.2d at 7; *see also State v. Leach*, 113 Wn.2d 735, 739, 782 P.2d 1035 (1989) ("'[A]n individual sharing authority over an otherwise private enclave inherently has a lessened expectation that his affairs will remain only within his purview, as the other cohabitants may permit entry in their own right.'"). If an individual "has common authority to use and control the premises," they have the "authority to consent to a search that is within the scope of that authority." *Morse*, 156 Wn.2d at 15.

We have previously described RCW 9.94A.631(1) as derived from the consent exception to the warrant requirement because "it requires the probationer to consent to a search." *Rooney*, 190 Wn. App. at 659; *see also* RCW 9.94A.631(1) ("[A] community corrections officer may require an offender to submit to a search."). Those who share their vehicle with individuals under DOC supervision necessarily assume some risk that the vehicle will be searched because probationers may be required to submit to a search.

Here, the investigating officers knew the car was registered to someone other than Bonomo. However, the owner of the car was not in the car, and officers observed Bonomo

8

driving the car and exhibiting control over the car. Even if we apply the *Winterstein* probable cause standard, officers had probable cause to believe Bonomo possessed the vehicle for purposes of his supervision.

Applying the common authority rule from *Morse*, Bonomo had common authority over the car and, therefore, he had authority to consent to a search of the car. Community corrections officers were authorized by RCW 9.94A.631(1) to require Bonomo to submit to the search. Because the car's owner was not present at the scene or charged with any unlawful activity as a result of the search, her consent, or lack thereof, is not relevant to Bonomo's motion to suppress.

We hold that because Bonomo exhibited authority over the car, he possessed the car for purposes of RCW 9.94A.631(1).

B.      *Reasonable Cause & Nexus Requirements*

Bonomo next argues that even if the officers had statutory authority to search the car, they did not have reasonable cause to believe he committed any additional probation violations "beyond being out of county and possessing a small amount of heroin." Br. of Appellant at 13 (emphasis omitted). He further argues that there was no nexus established between the trunk of the car and a suspected probation violation. We disagree.

RCW 9.94A.631(1) permits a warrantless search of a probationer's property where the officer has "reasonable cause to believe that an offender has violated a condition or requirement of the sentence." We have described "reasonable cause" as a "well-founded suspicion" and explained that it "requires specific and articulable facts and rational inferences." *State v. Parris*, 163 Wn. App. 110, 119, 259 P.3d 331 (2011), *abrogated on other grounds by Cornwell*, 190

Wn.2d 296. The standard is analogous to the standard for *Terry*[5] stops. *Id.* "The Supreme Court [of the United States] embraced the *Terry* rule to stop police from acting on mere hunches." *Doughty*, 170 Wn.2d at 63.

"Presence in a high crime area . . . is not enough" to establish a particularized suspicion. *State v. Martinez*, 135 Wn. App. 174, 180, 143 P.3d 855 (2006). But where officers have "observed suspected drugs" and the probationer is "very nervous," officers may have a well-founded suspicion to support a search of the probationer's property. *Lucas*, 56 Wn. App. at 244-45. In addition, officers may "rely on experience in evaluating arguably innocuous facts." *Martinez*, 135 Wn. App. at 180.

Article I, section 7 of the Washington Constitution also requires a nexus between the property searched and the suspected probation violation. *Cornwell*, 190 Wn.2d at 297. Although individuals on probation have limited expectations of privacy, they are protected against "open-ended property searches." *Id.* at 307; *see also State v. Olsen*, 189 Wn.2d 118, 134, 399 P.3d 1141 (2017) (reaffirming that "general, exploratory searches are not permissible under article I, section 7," even where the individual is on probation).

In *Cornwell*, the defendant was pulled over due to an outstanding warrant. 190 Wn.2d at 298. Officers believed that Cornwell was "attempting to distance himself from the car," and he was apprehended with $1,573 on his person. *Id.* at 299. A community corrections officer then searched the car "'to make sure there's no further violations of his probation.'" *Id.* The Supreme Court determined that this search was "clearly 'a fishing expedition,' which article I,

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

section 7 does not permit," because the officer testified that he was looking for evidence of "'*further* violations.'" *Id.* at 306-07 (internal quotation marks omitted) (quoting *Olsen*, 189 Wn.2d at 134). Although the officer may have suspected additional violations, "the only probation violation supported by the record" was a failure to report, and "there is no nexus between property and the crime of failure to report." *Id.* at 306; *see also State v. Jardinez*, 184 Wn. App. 518, 523, 529, 338 P.3d 292 (2014) (holding that a warrantless search of the contents of parolee's iPod was impermissible because the officer did not expect to find any evidence of the established parole violations—failure to appear and admitted marijuana use—on the iPod).

However, if officers have a well-founded suspicion that contraband may be in a probationer's vehicle, they are authorized to search the entire vehicle. *State v. Coahran*, 27 Wn. App. 664, 667, 620 P.2d 116 (1980). This is supported by the broad language in RCW 9.94A.631(1) permitting a search of "the offender's . . . automobile."

Here, the officers had reasonable cause to believe that Bonomo violated conditions of his community custody. He was outside of the county without written authorization, and he was carrying heroin in his pocket. These clear violations were established prior to the vehicle search.

The officers also established a nexus between the car and the probation violation of possessing a controlled substance. Like the officer in *Cornwell*, Johnson testified that he "believed there was possible further violations inside the car." VRP at 104-05. However, in *Cornwell*, the only known violation was a failure to appear, so the officer's suspicion that he would find evidence of "'further violations'" in Cornwell's truck was a mere hunch. 190 Wn.2d at 299. In contrast, although officers here believed that they may find evidence of further

11

violations inside Bonomo's car, the search of Bonomo's car was connected to a known probation violation—possession of a controlled substance.

The specific and articulable facts that inspired the officers' suspicion were Bonomo's possession of heroin on his person, his furtive movements, and his failure to immediately comply with officer requests to exit the car. The trial court also relied on the community corrections officers' training and experience that when a probationer has controlled substances on his person, he is likely to have controlled substances and other contraband in his vehicle. These facts gave rise to a rational inference that additional contraband may be inside the car.

Although different standards may apply to searches of trunks or locked containers in other contexts, the statutory exception here applies broadly to "the offender's . . . automobile." RCW 9.94A.631(1). Because he was under the State's supervision, Bonomo had a diminished expectation of privacy. Once officers had reasonable cause to search his vehicle, they were justified in searching the entire vehicle, including the trunk.

We hold that community corrections officers satisfied the reasonable cause and nexus requirements for a warrantless search pursuant to RCW 9.94A.631(1). We affirm the trial court's denial of Bonomo's motion to suppress the evidence recovered from the car and affirm Bonomo's convictions for unlawful possession of a firearm and unlawful possession of a short-barreled shotgun.

## II. UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE

Next, Bonomo argues that the strict liability crime of simple possession of a controlled substance violates due process. *Blake*, 197 Wn.2d at 173-74. The State concedes that this conviction should be vacated. In light of the Supreme Court's recent opinion in *Blake*, which

12

held that the statute punishing possession of a controlled substance as a strict liability crime is unconstitutional, we agree. 197 Wn.2d at 173-74.

After the parties submitted briefs in this case, our Supreme Court held that RCW 69.50.4013(1), the strict liability drug possession statute, violated the due process clauses of the state and federal constitutions and was therefore void. *Id.* at 195. Where an individual is convicted of violating a statute that is deemed unconstitutional before their conviction is final, the appropriate remedy is to reverse the conviction. *See State v. Reynolds*, 12 Wn. App. 2d 181, 188, 457 P.3d 474 (2020).

Bonomo was convicted of unlawfully possessing heroin in violation of RCW 69.50.4013(1). The Supreme Court has since ruled that because RCW 69.50.4013(1) does not include a knowledge element, it is unconstitutional and void. We accept the State's concession, reverse Bonomo's conviction for unlawful possession of a controlled substance, and remand for the trial court to vacate the conviction and resentence Bonomo.

### III. LEGAL FINANCIAL OBLIGATIONS & INTEREST ACCRUAL

Finally, Bonomo argues the trial court improperly imposed the criminal filing fee and DNA database fee and improperly included an interest accrual provision in his judgment and sentence. The State concedes that these LFOs were improperly imposed. We accept the State's concession and, on remand, direct the trial court to refrain from imposing the criminal filing fee, DNA database fee, and interest accrual.[6]

---

[6] Because we remand to the trial court for resentencing, we need not address Bonomo's claim that the trial court imposed a sentence based on an inaccurate offender score.

No. 52809-6-II

CONCLUSION

In conclusion, we hold that the search of Bonomo's car was lawful under RCW 9.94A.631(1). Bonomo possessed the car for purposes of the statute, and officers satisfied the reasonable cause and nexus requirements. Therefore, we affirm the trial court's denial of Bonomo's motion to suppress, and we affirm Bonomo's convictions for unlawful possession of a firearm and unlawful possession of a short-barreled shotgun. Because Bonomo's conviction for unlawful possession of a controlled substance was based on an unconstitutional statute, we reverse the controlled substance possession conviction and remand for the trial court to vacate the conviction and resentence Bonomo. At resentencing, the trial court should not impose the criminal filing fee, DNA database fee, or interest accrual.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Sutton, J.